Juanita JACKSON *v.* Jerry KELLY

00-1450 44 S.W.3d 328

Supreme Court of Arkansas
Opinion delivered May 31, 2001

*Richard F. Hatfield*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Edwin L. Lowther, Jr.*, for appellee.

ANNABELLE CLINTON IMBER, Justice. This appeal raises an issue of first impression — whether Arkansas recognizes the tort of intentional interference with inheritance. We decline to recognize the tort in this case because the appellant's remedy in probate court would have been adequate had she prevailed in her will contest.

Alta Austin died in 1997, and was survived by her two children, Juanita Jackson and Tommy Austin. Following her death, Tommy Austin petitioned the Lonoke County Probate Court to have her January 14, 1994 will admitted to probate. The will named Tommy as the sole beneficiary of Mrs. Austin's estate and specifically excluded Juanita. Thereafter, Juanita contested the will in the probate court on the following grounds: (1) Mrs. Austin did not have the requisite testamentary intent to execute the document as required by Arkansas law, and (2) Mrs. Austin was subject to undue influence in preparing and executing the document. The probate court found that Juanita had failed to meet her burden of proof to

invalidate the will, and admitted the will to probate. Juanita appealed the probate court's decision to the Arkansas Court of Appeals. In an unpublished opinion, the court of appeals concluded that the probate court's findings were not clearly erroneous and affirmed the court's decision to admit the will to probate. *Jackson v. Austin*, CA99-34, slip op. (Ark. App. September 22, 1999).

Having lost in her attempt to invalidate the will in probate court, Juanita filed another action in the Mississippi County Circuit Court. In her complaint and amended complaint, Juanita made claims for (1) civil conspiracy and (2) tortious interference with an expected inheritance. Particularly, she alleged that Mrs. Austin had told Juanita many times that she would inherit one-half of Mrs. Austin's property, thereby causing Juanita to expect an inheritance from her mother. However, on or about August 13, 1993, Juanita's son, Andrew Jackson, borrowed $30,000 from Citizen's Bank and Trust Company of Carlisle, and, at Andrew's request, Mrs. Austin co-signed the note and placed two certificates of deposit in the amount of $37,600 as collateral for the loan. Juanita claimed that she had nothing to do with procuring the loan. On December 23, 1993, the due date on the loan, Andrew failed to repay the loan. According to Juanita, Andrew had contacted the bank about an extension on the loan and Mrs. Austin had agreed to the extension in discussions with Andrew.

Juanita further alleged in her complaint that Tommy Austin and his wife, Betty Austin, convinced Mrs. Austin that the bank would execute on her certificates of deposit due to Andrew's failure to repay the loan on its due date. On or about January 10, 1994, Betty, who assisted Mrs. Austin in personal matters, made an appointment for Mrs. Austin with attorney Jerry Kelly. Four days later, Betty took Mrs. Austin to Mr. Kelly's office in Carlisle, where Mr. Kelly conferred with Mrs. Austin and prepared the will that is the subject of this matter. Juanita claimed that the only reason Mrs. Austin prepared the will on January 14, 1994, and thereby disinherited Juanita, was that Mrs. Austin was convinced she would lose her certificates of deposit because of Andrew's delayed repayment of the loan.[1] Regarding the actions of Mr. Kelly, Juanita alleged that a loan

---

[1] As a result of that same visit, Mr. Kelly also prepared a complaint for Mrs. Austin. In that complaint, which was later filed in Lonoke County Circuit Court, Alta Austin alleged that Andrew had breached his loan agreement with the bank and that the bank "presently or will in the immediate future execute upon the Certificates of Deposit to the extent of the loan balance[.]" She prayed for a judgment against Juanita and Andrew in the amount of $30,553.32 to compensate her for losses, costs, and attorney's fees. The complaint alleged

officer at the bank talked with Mr. Kelly on or about January 14, 1994, and told him that the bank was not acting to take Mrs. Austin's certificates of deposit and that no such action was contemplated at that time. After Andrew and Juanita were served with copies of Mrs. Austin's complaint, on or about January 18, 1994, Andrew immediately repaid the loan in full, whereupon the bank released the certificates of deposit to Mrs. Austin. Consequently, the bank never executed upon Mrs. Austin's certificates of deposit.

Juanita named Mr. Kelly and Betty Austin as defendants in her complaint and averred that both defendants, jointly and severally, conspired to have Alta Austin sign the January 14, 1994 will, leaving all of her estate to Tommy, and interfered with Juanita's expected inheritance. She prayed for compensatory damages equal to one-half of Alta Austin's property, legal costs, and punitive damages.

In his answer, Mr. Kelly denied that venue was proper in Mississippi County and moved to dismiss the complaint pursuant to Ark. R. Civ. P. 12(b)(3).[2] He also disputed Juanita's allegations (1) that she had nothing to do with procuring the bank loan; (2) that the bank had extended the loan; (3) that Mrs. Austin had agreed to the extension; and (4) that a loan officer had advised Mr. Kelly on January 14, 1994, that the bank was not taking action against Mrs. Austin's certificates of deposit. Furthermore, based upon his assertion that the complaint failed to state facts upon which relief could be granted, Mr. Kelly moved to dismiss the complaint pursuant to Ark. R. Civ. P. 12(b)(6). Finally, he asserted that Juanita's claim was waived by the applicable statute of limitations, as well as the doctrines of *res judicata* and collateral estoppel. In a joint memorandum, Mr. Kelly and Betty argued that the suit was barred by the probate court's order admitting the January 14, 1994 will to probate pursuant to the doctrines of *res judicata* and collateral estoppel, and that the tort of intentional interference with expected inheritance had not been recognized in Arkansas.

The circuit court treated the joint motion to dismiss as a motion for summary judgment and, after conducting a hearing, entered an order dismissing Juanita's claims against Mr. Kelly and Betty. The order stated, in pertinent part:

---

that both Juanita and Andrew had persuaded Alta Austin to pledge her certificates of deposit as security for the loan to Andrew. The lawsuit was eventually dismissed.

[2] He subsequently filed a separate motion to dismiss the complaint pursuant to Ark. R. Civ. P. 12(b)(3) for lack of venue.

• "[T]he tort of interference with prospective inheritance is not recognized in the State of Arkansas."

• "Even if the tort should be recognized, issue preclusion clearly bars the claim of plaintiff against defendant Betty Austin."

• "[T]he claim of plaintiff against defendant Jerry Kelly fails as a matter of law based on no dispute as to any issue of material fact. The court finds that even if the tort of interference with prospective inheritance were recognized by the court that under the record before the court, defendant Kelly is entitled to prevail because [sic] an absence of proof as to some of the essential elements of that tort."

Also, the findings of fact and conclusions of law announced orally by the circuit court at the conclusion of the hearing were incorporated into and attached to the written order. With regard to venue, the court found as follows: "I think that the broadening of the dismissal motions to summary judgment motions likely constitutes a waiver of the venue argument because it gets into substantive issues that would be dispositive on the merits." With regard to the civil conspiracy allegation against Mr. Kelly and Betty Austin, the court stated:

> I don't think that there's any doubt without getting into the not-yet recognized tort of interference with expectancy of an inheritance that's been argued, and it's been asserted by the plaintiffs in the case; without getting into that, I think that the issue, I think that issue preclusion clearly bars the claim for summary judgment purposes against Betty Austin, and am so holding.
>
> As to Kelly, any conspiracy, any alleged conspiracy with Betty Austin that would lead to undue influence procurement or things of that nature, whether standing alone or as part of a prong of proof for the expectancy tort, uh, interference with expectancy tort, and the probate court has already found there was no undue influence, there was no procurement.

Thus, the circuit court found that the civil conspiracy claim against both defendants was barred by the previous probate court action. Juanita appeals from the circuit court's order dismissing her claim against Mr. Kelly for tortious interference with an expected inheritance. She does not appeal from that part of the order dismissing Betty; nor does she appeal the dismissal of the civil conspiracy claim.

■ For her first point on appeal, Juanita argues that the trial court erred when it concluded that the tort of interference with inheritance is not recognized in Arkansas. She asserts that although there is no Arkansas case directly on point, this court *impliedly* recognized the cause of action in *Anderson v. Bank of Hot Springs*, 304 Ark. 164, 801 S.W.2d 273 (1990). We disagree. In that case, we affirmed the trial court's summary judgment dismissal of a claim for tortious interference with expected inheritance. *Id.* In doing so, however, this court did not decide whether such a cause of action actually existed under Arkansas law because the issue was never raised by the parties.

■ Juanita urges this court to recognize the tort of interference with inheritance and cites as authority section 774B of the RESTATEMENT (SECOND) OF TORTS, which is entitled "Intentional Interference with Inheritance or Gift":

> One who by fraud, duress, or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift.

RESTATEMENT (SECOND) OF TORTS § 774B (1979). The question then is whether we should adopt that section of the RESTATEMENT (SECOND) OF TORTS as the law in Arkansas. We recently laid down principles to guide us in making such a decision:

> This Court treads cautiously when deciding whether to recognize a new tort. While the law must adjust to meet society's changing needs, we must balance that adjustment against boundless claims in an already crowded judicial system. We are especially averse to creating a tort that would only lead to˙ duplicative litigation, encouraging inefficient relitigation of issues better handled within the context of the core cause of action.

*Goff v. Harold Ives Trucking Co., Inc.*, 342 Ark. 143, 151, 27 S.W.3d 387, 391 (2000) (citing *Trevino v. Ortega*, 969 S.W.2d 950, 951–52 (Tex. 1998)). We declined to recognize the tort of intentional spoliation of evidence because "there are sufficient other avenues, short of creating a new cause of action, that serve to remedy the situation for a plaintiff" and because "we do not find it necessary to create a new tort out of whole cloth in order to provide a party with a remedy." *Id.*, 342 Ark. at 150, 27 S.W.3d at 391.

■ Those same principles prevent us from creating a new cause of action to provide Juanita with a remedy in this case. Particularly, she had access to an adequate remedy in probate court. Her claim for interference with inheritance in this case was based on her own assertion that her mother, the decedent, "had many times represented to [her] that she would inherit one-half (1/2) of [the decedent's] property...." Thus, in her complaint, Juanita prayed for compensatory damages equal to one-half of the decedent's property. Had Juanita succeeded in her will contest in probate court, the will that excluded her from inheriting from the decedent would not have been admitted to probate, and the decedent's estate would have passed according to the statutory rules of intestate succession.[3] Arkansas Code Annotated Section 28-9-204 (1987), regarding intestate succession, states, in relevant part:

> Heirs will take per capita in the following circumstances:
>
> (1) If all members of the class who inherit real or personal property from an intestate are related to the intestate in equal degree, they will inherit the intestate's estate in equal shares and will be said to take per capita.
>
>> (A) For illustration, if the intestate leaves no heirs except children, the children will take per capita and in equal shares
>> ....

Because the decedent left only two children, Juanita and Tommy, had Juanita prevailed in her will contest, she would have inherited one-half of the decedent's estate. A successful will contest would have provided her with the same remedy that she sought in her tort action in circuit court. Thus, we conclude that Juanita was provided with an adequate remedy in probate court. Under these circumstances, we hold that it is unnecessary to create a new tort in this case.

■■ Even among those jurisdiction that have recognized a cause of action for intentional interference with inheritance, most courts hold that the plaintiff, in order to pursue the cause of action, must show that there are no adequate alternative remedies to the tort action.

---

[3] Juanita never presented another will of the decedent for probate.

Most states that have considered the issue have held that a claim for tortious interference with expectancy of inheritance may only be brought where conventional probate relief would be inadequate . . . . If a will contest is available to the plaintiffs, and a successful contest would provide complete relief, no tort action is warranted.

James A. Fassold, *Tortious Interference with Expectancy of Inheritance: New Tort, New Traps*, 36 Ariz. Atty. 26 (January 2000) (citing *Moore v. Graybeal*, 843 F.2d 706, 711 (3d Cir. 1988) (applying Delaware law); *Firestone v. Galbreath*, 895 F. Supp. 917, 926 (S.D. Ohio 1995) (applying Ohio law); *McGregor v. McGregor*, 101 F. Supp. 848, 850 (D. Colo. 1951) (apparently applying Colorado or Louisiana law); *Beren v. Ropfogel*, 1992 WL 373935 (D. Kan. 1992), aff'd, 24 F.3d 1226 (10th Cir. 1994); *Benedict v. Smith*, 376 A.2d 774, 776 (Conn. Super. Ct. 1977); *DeWitt v. Duce*, 408 So.2d 215, 218 (Fla. 1981); *Robinson v. First State Bank of Monticello*, 454 N.E.2d 288, 294 (Ill. 1983); *Minton v. Sackett*, 671 N.E.2d 160, 162 (Ind.App. 1996); *Allen v. Lovell's Administratrix*, 197 S.W.2d 424, 426 (Ky. 1946); *Brignati v. Medenwald*, 53 N.E.2d 673, 674 (Mass. 1944); *Scott v. Estate of Ehrmann*, 916 S.W.2d 872, 874 (Mo. App. 1996); *Griffin v. Baucom*, 328 S.E.2d 38, 42 (N.C. 1985)). See also Marilyn Marmai, *Tortious Interference with Inheritance: Primary Remedy or Last Recourse*, 5 Conn. Prob. L.J. 295 (1991). The reason for such a prerequisite has been stated as follows:

One frequently cited reason for allowing recovery for intentional interference with inheritance is that every wrong should have a remedy. Yet the facts giving rise to the tort are often identical to facts giving rise to a will contest. If either action would provide an adequate remedy, the plaintiff should be limited to the probate action because that is the preferred method for resolving issues related to wills. Accordingly, most jurisdictions prohibit a plaintiff from pursing the tort action unless a probate action is either unavailable or inadequate.

Nita Ledford, Note, *Intentional Interference with Inheritance*, 30 Real Prop. Prob. & Tr. J. 325 (1995).[4]

---

[4] Other cases supporting the proposition that a claim for interference with inheritance will be allowed only where probate relief would be inadequate are: *Maxwell v. Southwest National Bank*, 593 F.Supp. 250, 253 (D. Kan. 1984) ("[I]f the plaintiff had challenged the will and succeeded, he could have obtained all the relief he could receive as damages in this case. ... Therefore, this court concludes that plaintiff has not stated a claim upon which relief can be granted with respect to plaintiff's claim of intentional interference with inheritance.");

 Furthermore, Juanita's claim for tortious interference with inheritance constitutes a collateral attack on the earlier probate decree:

> [C]ourts from many other jurisdictions have squarely faced the issue of determining when a tortious interference action ought to be considered an impermissible collateral attack on the probate proceedings. The vast majority of these cases characterize as collateral a later tort action whenever the plaintiff has failed to pursue an adequate remedy in the probate proceedings ... When plaintiff was the only heir and could have taken intestate by proving her claim of undue influence to defeat the will at probate, no later tort action is allowable to relitigate the undue influence claim.

*DeWitt v. Duce,* 408 So.2d 216, 218 (Fla. 1981). *See also, Reinhardt v. Kelly,* 164 F.3d 1296, 1300 (10th Cir. 1999) ("[A] claim of undue influence in the execution of a will is ancillary to a will challenge and belongs in state probate court."), and *McKibben v. Chubb,* 840 F.2d 1525, 1530 (10th Cir. 1988) ("When a claim is brought charging undue influence or fraud in the execution of a will, that action is ancillary to the challenge of the will and belongs in the Kansas probate proceedings ...."). This court has long held that where a probate court has subject matter jurisdiction, its judgment is conclusive, unless reversed, and cannot be attacked collaterally. *Brown v. Kennedy Well Works, Inc.,* 302 Ark. 213, 788 S.W.2d 948 (1990). Thus, we refuse to allow Juanita to make a collateral attack on the probate court's order, which was affirmed by the Arkansas Court of Appeals.

 Juanita nevertheless suggests that she did not have an adequate remedy in the will contest because, even if she had been successful in that action, she could not have sought recovery of her legal costs or an award of punitive damages. This suggestion is without merit. In determining the adequacy of relief for a claim of tortious interference with inheritance, an award of punitive damages is not considered a valid expectation. *In re Estate of Roeseler,* 679 N.E.2d 393, 406 (Ill. App. Ct. 1997); *Maxwell v. Southwest National*

---

*Graham v. Manche,* 974 S.W.2d 580, 583 (Mo. Ct. App. 1998) ("[m]ost courts allow a plaintiff to pursue an intentional interference claim only if special circumstances exist which make remedy of a will contest inadequate."); *In re Estate of Knowlson,* 562 N.E.2d 277, 280 (Ill. App. Ct. 1990) ("Where a will contest is available and would provide adequate relief to an injured party, a tort action does not lie ...."); *In re Estate of Hoover,* 513 N.E.2d 991, 992 (Ill. App. Ct. 1987) ("The tort action will not lie, however, where the remedy of a will contest is available and would provide the injured party with adequate relief").

*Bank*, 593 F.Supp. 250, 253 (D. Kan. 1984). Similarly, it stands to reason that the recovery of legal costs is not a valid expectation.

 Finally, Juanita contends that we should recognize a cause of action of intentional interference with inheritance because, if we do not, other plaintiffs will be left without an adequate remedy in probate court. She hypothesizes that there would be no adequate probate court remedy where the plaintiff is not an heir of the testator or where the property purportedly to be left to the plaintiff was in a trust and not in the decedent's estate or subject to the decedent's will. However, the undisputed facts of this case are that Juanita was an heir of the testator, and the property was not in a trust. In this case, the relief available in probate court would have been adequate had she prevailed — she would have inherited one-half of the decedent's estate.

For the above stated reasons, we affirm the circuit court's dismissal of Juanita's claim for tortious interference with expected inheritance.

Affirmed.