2009 Ark. 169

**David REES and Rees Law Firm, Appellants,**

v.

**Sandra SMITH, Appellee.**

**No. 08–293.**

Supreme Court of Arkansas.

April 2, 2009.

Woodruff Law Firm, P.A., by: Arlon L. Woodruff and Jennifer Woodruff, Lake City, for appellants.

Timothy O. Dudley, Little Rock, for appellee.

JIM GUNTER, Justice.

Appellee Sandra Smith sued appellants, alleging various torts, after appellant David Rees allegedly demanded sexual favors as a condition of his continued legal representation of her. A jury awarded appellee $10,000 for emotional distress, and appellants now raise seven arguments on appeal: the trial court erred in (1) allowing appellee to present her claim when there is no legal basis for a right of recovery for emotional distress in breach of fiduciary duty cases; (2) denying appellants' motion for sanctions for appellee's alleged discovery violations; (3) admitting appellee's expert testimony; (4) admonishing Rees and removing the jury several times during his testimony, thereby unfairly prejudicing the jury; (5) allowing appellee to introduce prejudicial evidence of Rees's relationship with another woman; (6) allowing appellee to argue for punitive damages during closing arguments; and (7) denying appellants' motion for directed verdict. Appellee cross-appeals, asserting that the trial court erred in (1) granting appellants' motion for summary judgment on the tort of outrage, and (2) granting appellants' motion for directed verdict on the issue of punitive damages. Because this case involves the discipline of attorneys-at-law, this court has jurisdiction pursuant to Ark. Sup. Ct. R. 1–2(a)(5). We reverse in part and affirm in part on direct appeal and reverse on cross-appeal.

On August 17, 2004, appellee filed a complaint in Craighead County Circuit Court, claiming that she had sought the services of Rees based upon his advertisements regarding Depo–Provera claims; that Rees breached his fiduciary duty to her as her attorney by making unwanted sexual advances and demanding that she engage in a sexual relationship with him as a condition of his continued representation; and that due to Rees's conduct, she had suffered emotional distress. Appellee stated claims based on assault, battery, outrage, and breach of fiduciary duty.

On June 2, 2005, appellants filed a motion for summary judgment on all counts. Appellee responded and admitted that the claims for assault and battery were barred by the statute of limitations, but she contended that the claims for outrage and breach of fiduciary duty were still viable and evident from the pleadings. In an order entered March 9, 2006, the court granted appellants partial summary judgment on the issues of assault, battery, and outrage. After a jury trial on the issue of breach of fiduciary duty, appellee was awarded $10,000 for emotional distress.

On appeal, appellants first contend that the trial court erred in allowing appellee to present her claim of breach of fiduciary duty to the jury when there is no legal basis for a right of recovery solely for emotional distress in breach of fiduciary duty cases. Appellants argue that, as there is no basis for appellee's claim, allowing the jury verdict to stand would be tantamount to recognizing a new cause of action. The question of whether a valid cause of action is presented is one of law, which this court reviews de novo. *Helena–W. Helena Sch. Dist. v. Fluker*, 371 Ark. 574, 268 S.W.3d 879 (2007). This

court treads cautiously when deciding whether to recognize a new tort. *Jackson v. Kelly,* 345 Ark. 151, 44 S.W.3d 328 (2001). While the law must adjust to meet society's changing needs, we must balance that adjustment against boundless claims in an already crowded judicial system. *Id.* We will decline to recognize a new cause of action if there are sufficient other avenues, short of creating a new cause of action, that serve to remedy the situation for a plaintiff. *Id.*

In the instant case, however, we need not decide whether appellee's claim should be recognized as a "new" cause of action, because appellee has unquestionably failed to show any quantifiable economic loss, and we will not recognize recovery for emotional damages without any accompanying economic loss in contract-based actions such as breach of fiduciary duty. We note with approval the words of the Illinois Appellate Court in this regard:

> If we were to recognize that emotional harm, absent any quantifiable injury stemming from an attorney's legal representation of his client, was sufficient to support an action for breach of a lawyer's fiduciary duty, we would be opening the door to any number of malpractice actions brought by clients who may have been less than satisfied with their legal representation but can point to no specific harm other than their own emotional distress. The potential for abuse would be too great.

*Suppressed v. Suppressed,* 206 Ill.App.3d 918, 151 Ill.Dec. 830, 565 N.E.2d 101, 106 (1990). Instead, damages for emotional distress, without any physical injury or other recoverable element of damage, have only been upheld in claims based on outrage. *See Hess v. Treece,* 286 Ark. 434, 693 S.W.2d 792 (1985); *Growth Properties I v. Cannon,* 282 Ark. 472, 669 S.W.2d 447

(1984); *Olan Mills, Inc. v. Dodd,* 234 Ark. 495, 353 S.W.2d 22 (1962).

Contrary to appellee's argument that this holding will leave her without a remedy, we find that the tort of outrage is an available remedy for recovery of damages for emotional distress where no quantifiable economic loss is proved. This necessarily leads us to next consider appellee's argument on cross-appeal that the trial court erred in granting summary judgment in favor of appellants on the claim of outrage. Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Hisaw v. State Farm Mut. Auto. Ins. Co.,* 353 Ark. 668, 122 S.W.3d 1 (2003). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable persons might reach different conclusions from those undisputed facts. *Id.*

To establish a claim for outrage, a plaintiff must demonstrate the following elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, beyond all possible bounds of decency, and was utter-

ly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 69 S.W.3d 393 (2002).

In her amended complaint, filed October 25, 2004, appellee alleged the following facts. In late 1997 or early 1998, appellee learned that Rees and his law firm were advertising for cases involving the birth control drug Depo–Provera. She sought Rees's professional services for a claim based on the drug, and Rees filed a claim on her behalf sometime in 1998. Beginning in 1999, Rees began demanding sexual favors from appellee, and approximately six months later, appellee succumbed and had sex with Rees on an almost-weekly basis for approximately eight months. According to appellee, Rees told her that having sex with him was a requirement of his continued representation of her in her Depo–Provera claim.[1] In early 2000, appellee attempted to terminate the sexual relationship, but after Rees threatened to discontinue work on her case, she continued having sex with him three or four times a month. Appellee alleged that, in 2002, Rees harassed her with telephone calls, sought her out at her place of employment on several occasions, and showed up at her house on at least one occasion, asking to have sex with her. By May 2003, appellee believed the sexual relationship had come to an end, but after seeing Rees at a Christmas party in December 2003, he again began calling her and demanding sexual favors in exchange for con-

tinuing to represent her. The sexual relationship then continued until May 2004.

Appellee alleged that, as a result of Rees's actions, she required psychiatric care and counseling and had problems with employment. She claimed that the sexual relationship instigated by Rees was a breach of his fiduciary duty, and she also asserted that Rees purposefully inflicted this emotional distress. She claimed that his conduct was extreme, outrageous, and "utterly intolerable in a civilized community."

In response, Rees denied all the allegations and, in a counterclaim filed February 11, 2005, claimed that he had never represented her in a legal dispute; that he never made sexual advances toward her; and that appellee had conspired to extort money from him by threatening to reveal these untruthful allegations.[2] In the motion for summary judgment, appellants asserted that appellee could not meet the elements of the tort of outrage and attached copies of appellee's answers to interrogatories as support for this contention. In the interrogatories, appellee claimed the following injuries: loss of self-esteem, anger, loss of weight, loss of appetite, sleep deprivation, problems with social relationships, and a distrust of men. In response to appellants' motion for summary judgment, appellee referred the court to Rees's actions as laid out in her complaint, and she also asserted that any argument appellants had regarding the sufficiency of her damages would be better dealt with through cross-examination at trial. The court's order granting summary judgment on outrage merely stated that

---

1. At trial, appellee testified that not only had Rees demanded sexual favors as a condition of his continued representation, he also stated: "I know lawyers that have represented you before and if you don't do this then ... there's not another lawyer in Northeast Ar-

kansas or Southeast Missouri who's gonna represent you when I get through with you."

2. Rees's counterclaim was later dismissed by summary judgment on September 7, 2007.

appellants were entitled to summary judgment and gave no further explanation.

On appeal, appellee claims that the unique facts of this case entitled her to present her claim of outrage to the jury; therefore, it was error for the court to grant summary judgment in favor of appellants. In her argument, appellee again asserts the many factual allegations that were contained in her complaint. She also argues that, because the jury found in her favor, it is now undisputed that Rees engaged in outrageous conduct and that she therefore had a valid claim for the tort of outrage. To support her argument, appellee cites *McQuay v. Guntharp*, 331 Ark. 466, 963 S.W.2d 583 (1998), in which this court reversed a dismissal of a claim of outrage against a doctor who had fondled his female patients, and *Croom v. Younts*, 323 Ark. 95, 913 S.W.2d 283 (1996), in which this court affirmed a finding of outrage where a 51–year–old man had aggressively pursued a sexual relationship with his 15–year–old cousin, which eventually led to the child's attempted suicide and hospitalization. Appellee also cites Arkansas statutory law making certain types of sexual relationships between professionals and their clients illegal, including physicians, dentists, judges, and teachers, and analogizes that the case should be the same for attorneys. *See* Ark.Code Ann. § 5–14–126(a)(1)(C) (Supp.2007); Ark. Code Ann. § 12–12–507(b)(4) (Supp.2007).

In response, appellants argue that appellee has incorrectly based her argument against the granting of summary judgment on the evidence adduced at trial, when the summary judgment was granted based only on the evidence presented in the pleadings, affidavits, and other discovery presented at the time of the motion. Appellants also take issue with appellee's reliance on statutory authority, noting that the statute referred to by appellee specifi-

cally omits private attorneys. And finally, appellants argue that the damages alleged by appellee in her complaint, including "emotional pain," "problems with employment," "anger," and "loss of self-esteem," are clearly insufficient to support a claim of outrage.

While we agree with appellants that evidence adduced at trial is an improper basis for a reversal of summary judgment, we also agree with appellee that the many factual allegations regarding Rees's behavior that were in dispute rendered the grant of summary judgment improper. In addition, we find that an action for outrage is particularly appropriate when there has been a violation of a trusted relationship and the injury is not just the result of an "unwanted, improper physical touching, but from the position and occupation of the actor." *McQuay*, 331 Ark. at 474, 963 S.W.2d at 587. Viewing the evidence in a light most favorable to the party against whom the motion was filed, we find that there are genuine issues of material fact that remain to be resolved, and we therefore reverse the grant of summary judgment on the claim of outrage.

Although we are reversing on appellants' first argument on direct appeal, we choose to address some of appellants' remaining arguments as they concern issues that may arise again upon remand. *See, e.g., Bailey v. Rose Care Ctr.*, 307 Ark. 14, 20, 817 S.W.2d 412, 415 (1991) (reversing and remanding on first point on appeal, then proceeding to address and reject two other of appellant's points on appeal "since they will likely recur on remand"). For their second argument on appeal, appellants assert that the trial court erred in denying the motion for sanctions for appellee's discovery violations. On December 29, 2006, June 18, 2007, and July 12, 2007, appellants filed motions for sanctions pursuant to Ark. R. Civ. P. 37, asserting

that appellee had repeatedly lied in her responses to discovery requests. At a pretrial hearing held July 30, 2007, the court denied appellants' motion, finding that "all of the matters at issue in this discovery involve issues of fact of which I can't do anything. If you are right, Mr. Rees, the jury will take care of it. . . . There were some incomplete answers and I will take that into consideration." In the pretrial order, filed September 18, 2007, the court determined there were no discovery violations.

The imposition of sanctions, including dismissal, for failure to provide discovery rests in the trial court's discretion; this court has repeatedly upheld the trial court's exercise of such discretion in fashioning severe sanctions for flagrant discovery violations. *S. College of Naturopathy v. State ex rel. Beebe*, 360 Ark. 543, 203 S.W.3d 111 (2005). On appeal, appellants argue that the trial court mistakenly believed it was without authority to impose sanctions, or in the alternative, that it was an abuse of discretion to not impose sanctions. However, there is no indication that the trial court was unaware of the law; appellants' counsel clearly explained the availability of Rule 37 sanctions at the pretrial hearing. The trial court viewed most of the "lies" pointed out by appellants as inconsistencies, which would affect appellee's credibility, and not as sanctionable conduct, and considering our standard of review, we find no abuse of discretion and affirm.

For their third argument on appeal, appellants argue that the trial court erred in admitting the testimony of John C. Everett, appellee's purported expert witness, because he did not qualify as an expert. In this case, however, Everett's testimony concerned only whether a breach of fiduciary duty had occurred, and because we are reversing the award of damages for such a breach, it is not clear that the issue will recur upon remand, and we therefore decline to address whether Everett did, in fact, qualify as an expert.

Fourth, appellants contend that the trial court erred in admonishing Rees and removing the jury several times during Rees's testimony, thereby unfairly prejudicing the jury. Multiple times during his direct examination, Rees would not respond to questions with a "yes" or "no" but instead attempted to give more explanatory answers than those sought by appellee's counsel. The court would then interrupt appellant and ask "Is your answer yes or no, Mr. Rees?" The court also had the jury removed three different times during Rees's testimony so the court could admonish him regarding his testimony. Appellants' counsel asked the court to admonish the jury so they would not draw any conclusions about the veracity or the testimony of appellant based upon the court sending them out multiple times, and the court obliged by instructing the jury not "to speculate at all about what may have occurred in the courtroom while you were absent." On appeal, appellants assert that the repeated interruptions and critical statements made by the court were highly prejudicial toward Rees, and the instruction given to the jury could not have erased the prejudice. Appellee responds that any error should be considered invited error, as it arose from Rees's own lack of cooperation. We resolve this issue by holding that appellants received the relief that was requested, which was an admonishment to the jury, and appellants are therefore not entitled to any further relief on appeal. *See Berry v. St. Paul Fire & Marine Ins. Co.*, 328 Ark. 553, 944 S.W.2d 838 (1997).

Next, appellants assert that the trial court erred in allowing appellee to introduce prejudicial evidence of Rees's re-

lationship with another woman. At the pretrial hearing, the court ruled that if appellants were allowed to bring up appellee's prior sexual history, then appellee would also be allowed to bring up Rees's sexual history. Appellee called Connie Dixon, who also had a lawsuit pending against Rees, as a witness. Appellants objected to Dixon's testimony, but the court ruled it was admissible under Rule 404(b) because it "may tend to show a scheme, motive, plan" and ruled that it was admissible for purposes of impeachment. Dixon testified that she and Rees had a sexual relationship while he was representing her because he threatened to terminate his representation of her otherwise, and she also testified that he used physical force against her.

On appeal, appellants assert that the purpose behind Dixon's testimony was merely to show Rees's bad character, which is inappropriate under 404(b) and was highly prejudicial to appellants. On the other hand, appellee argues that Dixon's testimony was completely appropriate and necessary to impeach Rees's earlier deposition testimony that he did not know Dixon and to show Rees's method of procuring sexual relationships with female clients by demanding sex in exchange for representation.

Evidentiary rulings are a matter of discretion and are reviewed only for abuse of that discretion. *Taylor v. Taylor,* 345 Ark. 300, 47 S.W.3d 222 (2001). We find no abuse of discretion on this point and agree that the evidence was admissible to show a plan or scheme. The trial court's admission of this evidence is therefore affirmed.

The only issue left to be addressed is appellee's argument concerning punitive damages, but we find it is not clear that the issue will recur upon remand and

therefore choose to not address the issue. *See Bailey, supra.*

Affirmed in part and reversed in part on direct appeal; reversed on cross-appeal.

HANNAH, C.J., and WILLS, J., not participating.