Robert WHITE *v.* Sharon PRIEST, In Her Official Capacity as Secretary of State of the State of Arkansas; and Mark Pryor, In His Official Capacity as Attorney General of Arkansas

02-284                                    73 S.W.3d 572

Supreme Court of Arkansas
Opinion delivered May 17, 2002

*Oscar Stilley*, for petitioner.

No response.

P ER CURIAM. Mr. Oscar Stilley has filed a petition for an original action wherein he asserts seven counts for relief. On April 10, 2002, this court granted his counts one and two, and denied the remaining counts. He had requested disqualification of all justices to recuse from hearing his petition because, he argues, they have demonstrated a hostility towards him and because the justices have an interest in the outcome in the case.

Mr. Stilley's arguments deal primarily with his belief that, over a ten-year period, this court ruled against him in five cases. He offers no other allegations bearing on any hostility issue, but seeks to "interrogate" the present justices "eyeball-to-eyeball" at a hearing in a discovery fashion in an attempt to find reasons why the court is hostile towards him. Instead of alleging reasons for the justices' recusing, he merely suggests he wants a hearing to "ferret out the facts" pertinent to disqualifications. Mr. Stilley also asserts the sitting justices have a pecuniary interest in this case because one of the ballot-title issues concerns a proposed amendment that could "cap" their salaries, if the proposed amendment is adopted. On April 10, 2002, this court granted Mr. Stilley's request to review that ballot title and proposed amendment.

■ ■    Mr. Stilley presents no valid reasons or allegations that warrant a justice's recusal in this case. The only reason Mr. Stilley offers to show the court's hostility towards him is that he lost five prior cases before this court that he claims he should have won. Fourteen different justices served on this court during the ten-year period in which those five cases were decided. This argument is yet another disingenuous way to again show his dissatisfaction concerning earlier opinions of this court with which he disagrees. Such re-visits of earlier cases offer *nothing new* showing that the precedential value of those opinions should be reversed. In fact, Stilley's pleadings, motion, and argument constitute a clear violation of Ark. R. App. P.—Civ. 11. In this same vein, this court, on prior occasions, has expressed its displeasure with attorneys who have directed disrespectful language towards courts and judges. *See McLemore v. Elliott*, 272 Ark. 306, 614 S.W.2d 226 (1981) (striking appellant's brief due to "intemperate and distasteful language" directed toward trial judge, pursuant to former Ark. Sup. Ct. R. 6); *see also* Ark. Sup. Ct. R. 1-5 (captioned "Contempt," it provides, "No argument, brief, or motion filed or made in the Court shall contain language showing disrespect for the trial court"). In view of Mr. Stilley's continued strident, disrespectful language used in his pleadings, motions, and arguments, and his repeated refusal to recognize and adhere to precedent, Mr. Stilley's 70-page brief should be stricken entirely.

Examples of Mr. Stilley's remarks follow:

> It is also all too possible that the Court will simply decline to rule consistently, upholding *Kurrus* when that is convenient, blithely ignoring *Kurrus* when consistency of decision making will not bring the desired result.

* * *

> Therefore, it appears that the only persons in this Act receiving more than $100,000 per year are judicial officers. Why then did the Court falsely claim that this Act supported their theory that many executive branch employees get over $100,000.

* * *

> The Court's action in pretending to raise a claimed conflict on the part of the Governor, on such flimsy grounds, indicates a

fear on the part of the justices that an impartial tribunal will decide the case honestly but contrary to the way that this Court would decide the case.

\* \* \*

It grieves undersigned counsel to be forced to recount part of the many serious and apparently intentional wrongs that the members of this Court has [sic] committed, as part of their claim for recusal. However, by refusing to honestly consider a fair claim for disqualification, made as gently as possible, the Court puts undersigned counsel in the position of having to raise these issues to protect his rights and the rights of his clients.

\* \* \*

The Court simply left its decision intact even though its reasoning is wholly irreconcilable with prior decisions of the Court. This leaves two possibilities. One, the court, in its original opinion intentionally lied about the citation of these authorities. These authorities do in fact annihilate the Court's reasoning and ruling on the parol evidence question in this case. If this is the basis for the oversight, the Court and each of its members necessarily demonstrate rank prejudice against Appellant and should recuse.

\* \* \*

The other possibility is that the Court accidentally overlooked these authorities, although they were cited and included in the lists of authorities, and although these cases were discussed at length at pages 2-4 of the Appellant's reply brief. If this is the problem, Appellant wishes to hear the reason, if any, that Appellant should be expected to trust the competence of the Court in the decision of this cause.

\* \* \*

By this means, any reader of this motion may examine Exhibit "1," and compare same to the opinion in Roberts v. Priest, and thus know that the Roberts Court wilfully and knowingly ignored the principal argument of the Intervenors, because the argument was irrefutable.

\* \* \*

The decision of the Court, coupled with the Court's history of refusing to correct blatant and manifest error upon request for rehearing, requires that undersigned counsel make this fact known to the public. Publicity is the cure for government evils. Most certainly, a refusal to acknowledge and adjudicate arguments, solely because they provide irrefutable proof in favor of a position disliked by the Court, is a government evil that must be stamped out.

\* \* \*

It seems the Court knew in advance that its ruling would not withstand any critical analysis, and wished to stifle any pleading that would expose the weakness of the Court's opinion.

\* \* \*

This simply shows that the Court reacts in anger to despised arguments by undersigned counsel that it cannot logically refute. This behavior is exactly the sort for which the bench and bar have fallen into great disfavor and distrust with the general public in Arkansas.

\* \* \*

What is required, in other words, is a return to *stare decisis*, and adherence to established legal rules even when the judge or justice prefers a result different from that required by the law. This conduct has not stopped. Rather it has intensified.

\* \* \*

The list of cases in which the Court has acted prejudicially to undersigned counsel is by no means complete. On the contrary, this is the tip of the iceberg. This Court has repeatedly shown that it will declare the law one way on undersigned counsel's cases, and the opposite on cases by other individuals.

\* \* \*

We cite the foregoing examples of the general tone of disrespect for the code of ethics and Mr. Stilley's breach of his oath of office as an attorney-at-law. That disrespect for the court pervades Mr. Stilley's brief. As was the situation in *McLemore*, we examined Mr. Stilley's brief to see if we could strike only some parts, but find Mr. Stilley's intemperate and distasteful language

spread throughout all of his brief. Mr. Stilley asked to incorporate his brief as part of his petition. We conclude that Mr. Stilley's brief is an inexcusable breach of the obligation of professional conduct that this court expects of the members of the bar. Accordingly, we direct that all copies of his brief shall be stricken in their entirety from the files of this court.

■ Because this matter implicates a breach of the Model Rules of Professional Conduct, we refer Mr. Stilley to the Professional Conduct Committee and request the Committee to take whatever action it believes his actions warrant under the Model Rules of Professional Conduct.

BROWN, J., concurs in part and dissents in part.

ROBERT L. BROWN, Justice, concurring in part; dissenting in part. I agree with much of the majority's opinion. However, I have decided to recuse on one of the two ballot-title matters that remain before this court to be decided. The case on which I am recusing involves a constitutional amendment to reduce the salaries of state officers and employees. If passed, it would mean a reduction of the salaries of Supreme Court Justices by almost twenty percent.

On the issues not related to recusal, I agree that Mr. Stilley is attempting to resuscitate an issue long since laid to rest in *Kurrus v. Priest*, 342 Ark. 434, 29 S.W.3d 669 (2000), and that he has not shown sufficient reason why he should not be sanctioned for this conduct under Arkansas Rule of Appellate Procedure—Civil 11. I also agree that he is not entitled to a fact-finding hearing under Appellate Rule 11. I further agree that an Appellate Rule 11 sanction of striking *most* of his brief is warranted because Mr. Stilley has filed a frivolous matter in this court. I would not, however, strike that portion of Mr. Stilley's brief which suggests recusal of this court's members due to a financial interest in the subject matter. Finally, I agree that this court lacked original jurisdiction to hear his illegal exaction cause of action brought against the members of this court. We appropriately dismissed that claim.

On recusal, Mr. Stilley has requested a declaratory judgment from this court on his proposed Ballot Title and Popular Name

concerning a proposed amendment to cap the salaries of all state officers and employees at $100,000 and fringe benefits at 25% of that salary. The Ballot Title and Popular Name have been approved by both the Secretary of State and the Attorney General, as required by Ark. Code. Ann. § 7-9-501 to -506 (Repl. 2000). That issue has not been dismissed by this court. It is still viable and awaits this court's decision.

I first believe that while Mr. Stilley is not entitled to a fact-finding hearing regarding recusal of the members of this court under Appellate Rule 11, he is entitled to five minutes to argue his renewed motion that the members of this court recuse due to a financial interest in the subject matter of the proposed amendment. An opportunity to be heard on this matter is fundamental due process. We routinely allow movants five minutes to argue any motions prior to oral arguments at our Thursday sessions of court. We allowed Mr. Stilley the same privilege in September 2001 to argue that this court should recuse in a different matter. *Stilley v. James*, 346 Ark. 28, 53 S.W.3d 524 (2001) (*per curiam*). I would similarly grant him five minutes to be heard on this recusal motion on the Ballot Title issue involving capping our salaries.

Secondly, Mr. Stilley, in his renewed motion for recusal, counters this court's first opinion in *White v. Priest*, 348 Ark. 135, 73 S.W.3d 572 (2002), by pointing to the fact that the Governor of this state, who is authorized to appoint special justices under the State Constitution following recusal, does not have a direct conflict of interest in this matter because he makes less than $100,000. Thus, the argument goes, the Governor is not suffering under the same disability as the members of this court, and the Rule of Necessity, which requires otherwise disqualified judges to sit when there is no replacement judge available, does not apply. Simply stated his argument is: Because the Governor is not directly affected by the proposed initiative, but only certain employees of the Executive Branch are, the Governor does not suffer from a disabling conflict of interest, comparable to the members of this court, which prevents him from appointing special justices to replace us. Again, I believe that Mr. Stilley should have the opportunity to argue this issue before this court. In today's opinion, the majority addresses Mr. Stilley's Rule of Necessity argument in a footnote and refers to other state officers

and employees who make over $100,000 a year. At this juncture, I am not convinced that the Governor has a conflict of interest comparable to that of this court. Certainly, special justices appointed by the Governor and sitting on this case would not have the conflict of interest that this court has. The majority should also address the difference in the federal judiciary which has no mechanism for appointment of special judges. The Rule of Necessity obviously applies in federal judicial salary matters; however, our situation in Arkansas, where we do have an appointment process, is different.

Amendment 80, which recently amended our State Constitution with a new Judicial Article, reads:

> No Justice or Judge shall preside or participate in any case in which he or she might be interested in the outcome, in which any party is related to him or her by consanguinity or affinity within such degree as prescribed by law, or in which he or she may have been counsel or have presided in any inferior court.

Ark. Const. Amend. 80, § 12. The following section provides for appointment of special justices by the Governor of the State when a justice of our court disqualifies. Ark. Const. Amend. 80 § 13(A). My research has developed no case where the Rule of Necessity has been applied when a process exists for the appointment of a special judge to sit for the disqualifying judge. It occurs to me that the Rule of Necessity would only come into play if the Governor determined he had a conflict and could not appoint special justices.

Recusal is a matter left largely to the discretion of the individual judge. *SEECO, Inc. v. Hales*, 341 Ark. 972, 22 S.W.3d 157 (2000); *U.S. Term Limits, Inc. v. Hill*, 315 Ark. 685, 870 S.W.2d 383 (1994) (motion to recuse denied). I therefore recuse and will not participate in the Ballot Title issue on capping the salaries of all government employees at $100,000. My reason for recusal is solely based on my financial interest in the subject matter of the proposed amendment and is not due to any other reason raised by Mr. Stilley. I request Chief Justice ARNOLD to request that the Governor appoint a special justice as my replacement for this Ballot Title issue only.