Oscar STILLEY *v.* SUPREME COURT COMMITTEE on PROFESSIONAL CONDUCT

06-972 259 S.W.3d 395

Supreme Court of Arkansas

Opinion delivered June 21, 2007

[Rehearing denied September 6, 2007.]

Appellant, pro se.

*Stark Ligon*, for appellee.

D ONALD L. CORBIN, Justice. Appellant Oscar Stilley appeals from an order of the Supreme Court Committee on Professional Conduct (Committee) finding him in violation of four provisions of the Arkansas Model Rules of Professional Conduct (Model Rules), and suspending his license to practice law for six months. On appeal, Stilley raises two arguments for reversal: the Committee erred in (1) permitting the sitting justices of the Arkansas Supreme Court to usurp the role of the Panel B Chair and to continue to sit and act on the Committee through the conclusion of the proceedings, depriving Stilley of witnesses and depositions, and depriving him of due process; and (2) imposing punishment for vague, undefined offenses for which there was no statutory or rule-based authorization, and for which this court had previously stated that no authority for punishment existed. As this case involves the discipline of an attorney, jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(5). We find no error and affirm.

### Facts

The facts leading up to the order at issue here arose from the decisions in *White v. Priest*, 348 Ark. 135, 73 S.W.3d 572 (2002) (*White I*) and *White v. Priest*, 348 Ark. 783, 73 S.W.3d 572 (2002) (per curiam) (*White II*). In *White I*, this court granted review of Counts 1 and 2 of White's complaint and dismissed Counts 3, 4, 5, 6, and 7. We also issued a show-cause order for Stilley, White's counsel, to show in writing why a sanction under Ark. R. App. P. – Civ. 11 should not be imposed against him. Stilley then filed a seventy-page brief which requested reconsideration, reinstatement of the complaint, and recusal of the justices. In *White II*, we issued a per curiam order, which struck Stilley's brief, in its entirety, from the files of this court, and referred him to the Committee for such action as the Committee believed warranted under the Model Rules. Specifically, this court held that "Stilley's pleadings, motion, and argument constitute a clear violation of Ark. R. App. P. – Civ. 11" and set out twelve examples of Stilley's remarks that demonstrated "the general tone of disrespect for the code of ethics

and Mr. Stilley's breach of his oath of office as an attorney-at-law" present throughout Stilley's brief. *White II*, 348 Ark. at 785, 787, 73 S.W.3d at 579, 581.

On July 16, 2002, the Office of Professional Conduct (Office) served a formal complaint on Stilley alleging that his conduct violated Model Rules 1.1, 1.2(a), 1.4(b), 1.7(b), 3.1, 3.4(c), and 8.4(d). Stilley denied that his conduct violated the Model Rules because he "did not use strident, intemperate, or disrespectful language"and argued that the complaint should be dismissed. The matter went to a ballot vote before Panel A of the Committee, and its confidential decision was sent to Stilley in a November 19, 2002 letter, which included Panel A's findings and order. Following receipt of Panel A's findings and order, Stilley timely requested a public hearing before Panel B.[1]

Prior to his public hearing, Stilley sought to take the depositions of the then-sitting justices of this court. Pursuant to his request, the Office issued subpoenas to the justices. On February 14, 2003, this court sent a letter to the Office, which stated some of Stilley's previous allegations against the court and pointed out that the proceeding before the Committee stemmed from the *White* decisions, such that this court could only conclude that "Mr. Stilley is again taking issue with this court's opinions." Furthermore, this court quashed the subpoenas, explicitly stating:

> In addition, we direct your attention to Ark. Code Ann. § 25-19-105(b)(7) (Repl. 2002), which provides that "unpublished memoranda, working papers, and correspondence of the Governor, members of the General Assembly, Supreme Court Justices, Court of Appeals Judges, and the Attorney General shall not be deemed to be made open to the public." *See also McCambridge v. City of Little Rock*, 298 Ark. 219, 766 S.W.2d 900 (1989). We conclude that it would be seriously improper for any court members to offer further explanation of the court's deliberation when reaching a final decision. All published opinions speak for themselves.

> For the reasons above, we must conclude that Mr. Stilley obviously has the wrong forum and his request for subpoenas in his Professional Conduct Committee proceeding is improper. Therefore, we request and direct the subpoenas to be quashed. *See* Ark.

---

[1] The request for this public hearing consequently rendered Panel A's findings and order void.

Code Ann. § 25-19-105(b)(8) (Documents which are protected from disclosure by order or rule of court).

Stilley responded to the February 14 letter requesting answers to some questions he had and for a determination of legal questions. On January 7, 2005, the Panel B Chair issued an order denying Stilley's motion.[2] On April 7, 2005, an order was entered resetting Stilley's public hearing for October 21, 2005.

Following the order resetting his hearing, Stilley filed a motion for specific findings concerning rights to determinations by the tribunal and findings concerning the identity of the tribunal. On January 19, 2006, Panel B issued an order denying Stilley's motion and again resetting his public hearing, this time for April 21, 2006.

On April 21, 2006, a public hearing was held on the complaint filed against Stilley. At the conclusion of the hearing, Panel B found Stilley in violation of four provisions of the Model Rules and suspended his law license for six months. Following this oral ruling, Stilley expressed his desire to appeal the ruling and, on April 29, 2006, filed a corrected motion for stay. On May 4, 2006, the Committee issued its findings and order. Specifically, the Committee unanimously found that Stilley's conduct violated Model Rules 1.7(b), 3.1, 3.4(c), and 8.4(d). That same day, the Committee issued an order granting Stilley's motion for stay pending appeal.

On May 18, 2006, Stilley filed a motion for findings of fact, conclusions of law, reconsideration, new trial, and other relief, pursuant to Ark. R. Civ. P. 52(b), or 59(a). In its June 2, 2006 order, entered nunc pro tunc June 6, 2006, the Committee explained that the Arkansas Rules of Civil Procedure are not applicable to proceedings before it and denied Stilley's motions. This appeal followed.

---

[2] It should also be noted that between the time of Stilley's February 19, 2003 response and Panel B's January 7, 2005 letter, Stilley sued the Arkansas Supreme Court justices in federal district court seeking money damages, declaratory and injunctive relief, including a directive to require the justices to submit to Stilley's depositions in the present case. *See Stilley v. Thornton*, 4:03CV000965 JMM (E.D. Ark. Mar. 23, 2004). The district court dismissed Stilley's action against the justices, and this dismissal was affirmed by the Eighth Circuit Court of Appeals. *See Stilley v. Dickey*, 117 F. App'x 492 (8th Cir. 2005). Following the Eighth Circuit's decision, Stilley petitioned for certiorari to the United States Supreme Court, which denied his petition. *See Stilley v. Dickey*, 546 U.S. 816 (2005).

*Standard of Review*

Recently, in *Walker v. Supreme Court Committee on Professional Conduct*, 368 Ark. 357, 246 S.W.3d 418 (2007), we reiterated the fixed standard of review for an appeal from the Committee:

> Pursuant to Section 12(B) of the Procedures, on appeal, this court carries out a *de novo* review on the record. *Lewellen v. Sup. Ct. Comm. on Prof'l Conduct*, 353 Ark. 641, 110 S.W.3d 263 (2003). A *de novo* review on the record determines whether the factual findings were clearly erroneous, or whether the result reached was arbitrary or groundless. *Id.* Due deference is given to the Committee's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Colvin v. Comm. on Prof'l Conduct*, 309 Ark. 592, 832 S.W.2d 246 (1992); *see also Neal v. Matthews*, 342 Ark. 566, 30 S.W.3d 92 (2000). However, conclusions of law are given no deference on appeal. *See Montgomery v. Bolton*, 349 Ark. 460, 79 S.W.3d 354 (2002). The Committee's findings of fact will not be reversed unless the findings are clearly erroneous, and the action taken by the Committee will be affirmed unless it is clearly against the preponderance of the evidence. *Fink v. Neal*, 328 Ark. 646, 945 S.W.2d 916 (1997).

*Id.* at 362, 246 S.W.3d at 421–22 (quoting *Comm. on Prof'l Conduct v. Revels*, 360 Ark. 69, 72-73, 199 S.W.3d 630, 631-32 (2004)). Additionally, a finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.*

Before examining Stilley's arguments, we would like to point out that he has not challenged, under either the United States or the Arkansas Constitutions or our rules, the magnitude of the actual penalty he received following the Committee's finding that he violated four provisions of the Model Rules. Rather, Stilley's appeal focuses on the process and his belief that the justices of this court are acting as his "accusers" and judges, as well as his belief that his conduct could not be the basis for punishment.[3]

---

[3] Prior to addressing his enumerated points of appeal, Stilley provides us with an overview of the charges against him and the Committee's findings. Also in this section, Stilley asks how we are going to rule upon the allegations when they concern a document, his stricken seventy-page brief, which is not part of the record. However, this argument is not

## Recusal and Due Process

Stilley's first argument for reversal is that the Committee erred in permitting the sitting justices of the Arkansas Supreme Court to usurp the role of the Panel B Chair and to continue to sit and act on the Committee, depriving Stilley of witnesses and depositions, and depriving him of due process. Essentially, Stilley's argument is that the justices of this court should have recused from this case because (1) the justices are Stilley's "accusers" and they have an interest in the outcome; and (2) due process is violated when a judicial officer presides over a case, alone or with others, where the judicial officer has an interest in the outcome.

### a. Recusal

Stilley first claims that, because of this court's letter order quashing his deposition requests, each of the justices[4] has refused to recuse from a decision stemming from "their own accusations," and they have usurped the role of the Panel B Chair. This argument is simply not true.

■ The present case is an appeal of a disciplinary action taken by the Committee against Stilley, following our decision in *White II*, 348 Ark. 783, 73 S.W.3d 572, to refer Stilley to the

---

well taken because, at his public hearing, the Committee noted that *White II*, 348 Ark. 783, 73 S.W.3d 572, contained examples that led to the complaint being filed against Stilley. Stark Ligon, the Executive Director of the Committee, in his opening statement to Panel B stated:

> I did not make the 70-page stricken brief a part of our complaint for two reasons, one, not to put 70 extra pages in the record, and also on the theory that the Court selected the examples that the Court felt led to the referral here, and that to add anything more was probably circumstantial.

A review of the hearing reveals that Stilley did not object to the brief not being part of the record nor did he attempt to have the brief made part of the record. It is an elementary principle of administrative law that an issue must be raised at the hearing below in order to be raised on appeal. *See Mid-South Rd. Builders, Inc. v. Ark. Contractors Licensing Bd.*, 328 Ark. 630, 946 S.W.2d 649 (1997). Furthermore, it is clear that the Committee based its findings and the subsequent suspension of Stilley's law license on (1) the arguments of counsel at the hearing; (2) the complaint and exhibits filed by the Committee, which included *White II*; and (3) Stilley's response to the complaint and his exhibits filed of record. Thus, the Committee's decision was based upon what was before it and that is the same record we will now review.

[4] Stilley specifically refers to current Chief Justice Hannah, current Justices Glaze, Corbin, Brown, and Imber, and former Chief Justice Arnold and Justice Thornton.

Committee based upon his conduct in that case. After this referral, this court did not have, nor did it play, a role in the action taken against Stilley. Specifically, we have granted our authority to regulate the Arkansas legal profession to the Committee. *See Cambiano v. Neal*, 342 Ark. 691, 35 S.W.3d 792 (2000). In *Hogue v. Neal*, 340 Ark. 250, 12 S.W.3d 186 (2000) (per curiam), we explained that it is the Executive Director of the Committee who determines if a complaint should be processed. Thus, even though this court's referral of Stilley to the Committee was treated as a formal complaint, pursuant to section 5(A) of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law (Procedures), it was the Executive Director's decision on whether to proceed and process the complaint. In this case, Director Stark Ligon felt that the complaint had merit and followed the proper regulations in proceeding against Stilley.

■ Additionally, the justices of this court have no interest in the outcome of this case. This is an appeal from a disciplinary action *against Stilley*, not against the justices. None of the justices were present at Stilley's public hearing, and, as the Panel B Chair stated at the hearing, "[T]he justices have no involvement. The only people who have any involvement in this proceeding would be the Office of Professional Conduct and the hearing panel." Furthermore, at the hearing, Director Ligon pointed out that "the only way the Arkansas Supreme Court would ever have anything to do with this case would be if there was an appeal from whatever decision might occur with this panel they've got docketed in the Arkansas Supreme Court as an appeal." That is exactly what has happened, as this appeal of the *disciplinary action* is now before this court.

■ Lastly, it should be noted that Stilley is reviving his attempt to have the justices of this court recuse, seemingly, from all cases involving him. In making his argument that the justices are his "accusers" and have an interest in the outcome of this case, Stilley rehashes the history of his prior cases, *Kurrus v. Priest*, 342 Ark. 434, 29 S.W.3d 669 (2000), *White I*, 348 Ark. 135, 73 S.W.3d 572, and *White II*, 348 Ark. 783, 73 S.W.3d 572. Simply put, Stilley is renewing his long-standing argument that he disagrees with this court's decisions in cases he believes he should have won. Just as this court pointed out in *White I*, recusal is simply not appropriate nor warranted in this case. *See White I*, 348 Ark. at 142,

73 S.W.3d at 575 (discussing White's motion for recusal, filed by Stilley, and stating "each justice, individually, rejects White's motion to recuse under the 'rule of necessity' ").

### b. Due process

The second subsection of Stilley's first argument for reversal is that due process is violated when a judicial officer presides over a case, alone or with others, where the judicial officer has an interest in the outcome.

First, in support of this assertion, Stilley claims that this court's decision in *White II*, 348 Ark. 783, 73 S.W.3d 572, "trampled upon well established law and furthermore essentially made up the rules for that proceeding and no other proceeding." Continuing upon this line of reasoning and his argument that the justices have an interest in the outcome of this case, Stilley claims that "[t]he stated justices, as accusers in *White v. Priest* and usurpers in CPC 2002-077, have unquestionably placed themselves in the position of being the judges on their own accusations. . . . such that there is no suitable remedy other than reversal." As stated above, this argument is without merit as the justices do not have an interest in the outcome of this case and recusal is not warranted.

Second, Stilley claims that, because the justices of this court, as his "accusers," usurped the role of the Panel B Chair, his due-process rights were clearly violated since he was denied the right to cross-examine his own "accusers." He also claims that the proceedings before the Committee clearly fell far below the minimum requirements of due process. This argument is flawed and reversal is not warranted due to Stilley's alleged due-process violation.

We have held that a party appearing before an administrative agency is entitled to due process in the proceedings. *See C.C.B. v. Ark. Dep't of Human Servs.*, 368 Ark. 540, 247 S.W.3d 870 (2007). A fair trial by a fair tribunal is a basic requirement of due process. *Id.* We have also held that an appellant, in attacking an administrative procedure on the basis of a denial of due process, has the burden of proving its invalidity. *Id.* In cases involving the discipline of attorneys, the attorney is entitled to procedural due process, which includes fair notice of the charge. *In re Ruffalo*, 390 U.S. 544 (1968). Additionally, this court has repeatedly held that the practice of law is a privilege, not a right. *See Ligon v. Newman,*

365 Ark. 510, 231 S.W.3d 662 (2006); *Cambiano*, 342 Ark. 691, 35 S.W.3d 792. Moreover, "any protections to a law license are only subject to the very lowest of review under the Due Process and Equal Protection[ ] Clauses of the Constitution." *Cambiano*, 342 Ark. at 703, 35 S.W.3d at 799.

As stated multiple times, the present case is an appeal from the Committee's decision to suspend Stilley's license to practice law for six months. Thus, Stilley is required to prove that this *decision* was invalid due to a violation of his due-process rights. He fails to meet this burden. Specifically, there was no due-process right violated when Stilley (1) received notice of the complaint and charges against him, (2) was notified of Panel A's decision, (3) requested and received a public hearing before Panel B, (4) attended the hearing, at which he represented himself, and (5) was allowed to present evidence on his behalf.[5]

A reversal of the Committee's decision is not warranted because (1) the justices of this court did not have an interest in the outcome of this case, (2) the justices did not usurp the role of Panel B's Chair, and (3) Stilley's due-process rights were not violated.

### Basis of Punishment

Stilley's second argument for reversal is that the Committee erred in imposing punishment for vague, undefined offenses for which there was no statutory or rule-based authorization, and for which this court had previously stated that no authority for punishment existed. Specifically, Stilley contends that the speech for which he was punished, the stricken seventy-page brief, could not be a basis for his punishment because: (1) pursuant to *Perryman v. Hackler*, 323 Ark. 500, 916 S.W.2d 105 (1996), an attorney can only be sanctioned for disrespectful comments made in a brief when they are directed at the trial court; (2) it was a privileged communication under Arkansas law; and (3) even if his conduct was prohibited, he was entitled to clear rules and notice that his speech could form the basis for punishment.

Arkansas Supreme Court Rule 1-5 states: "No argument, brief, or motion filed or made in the Court shall contain language

---

[5] Despite Stilley's argument to the contrary, he was entitled to present evidence on his behalf, i.e., Robert White's affidavit. The only thing that he was denied was his request to take the depositions of the justices of this court, which was properly denied pursuant to section 25-19-105(b)(8).

showing disrespect for the circuit court." This court repeatedly has expressed a displeasure with attorneys who have directed disrespectful language toward courts and officers of the court. *See Ligon v. McCullough*, 368 Ark. 598, 247 S.W.3d 868 (2007) (per curiam) (striking defendant's brief due to disrespectful and unnecessary language directed at the Executive Director of the Committee); *Cox v State*, 365 Ark. 358, 229 S.W.3d 883 (2006) (striking a sentence from the appellant's brief due to contemptuous and disrespectful language directed at the trial court); *Davenport v. Lee*, 349 Ark. 113, 115, 76 S.W.3d 265, 266 (2002) (per curiam) (holding that "[j]ust as we will not allow a lawyer to show disrespect for the judges sitting in circuit courts, we will not allow an attorney to show disrespect for the members of this court"); *White II*, 348 Ark. 783, 73 S.W.3d 572 (striking petitioner's brief seeking recusal of all the justices of this court based upon the petitioner's attorney's continued strident disrespectful language used in his pleadings, motions, and arguments, and his repeated refusal to recognize and adhere to precedent); *Henry v. Eberhard*, 309 Ark. 336, 832 S.W.2d 467 (1992) (striking portion of the appellant's brief containing offensive, inflammatory, and disrespectful language to the trial court); *McLemore v. Elliott*, 272 Ark. 306, 614 S.W.2d 226 (1981) (striking appellant's brief due to disrespectful and distasteful language directed at the trial judge). Furthermore, we have "caution[ed] attorneys from filing motions containing irrelevant, disrespectful, and caustic remarks that only serve to vent a party's emotions such as anger or hostility." *Ligon*, 368 Ark. at 599, 247 S.W.3d at 869.

▇ It is clear from this case law that briefs containing disrespectful language directed not only at the trial court, but also disrespectful language toward courts and officers of the court is not tolerated. Simply put, "this court expects the members of the bar to fulfill their professional responsibilities, while still maintaining the highest standards of ethical conduct." *Davenport*, 349 Ark. at 115, 76 S.W.3d at 266. Moreover, in some instances, we have referred the offending attorney to the Committee because the matter implicated a breach of the Model Rules. *See Ligon*, 368 Ark. 598, 247 S.W.3d 868; *Davenport*, 349 Ark. 113, 76 S.W.3d 265; *White II*, 348 Ark. 783, 73 S.W.3d 572.

Additionally, and despite Stilley's argument to the contrary, there is not a contradiction in our case law between *Perryman* and the other "disrespectful language" cases. In *Perryman*, the appellee accused the appellants of libel regarding "fruits of the crime"

statements made in their brief. *Perryman*, 323 Ark. at 505, 916 S.W.2d at 107. There, the appellee did not cite to any authority in support of his argument that this court could impose any sanctions on the appellants concerning the contents of their brief, and we held that the only authority to sanction comments in the brief were when those comments were directed at the trial court. It is clear that *Perryman* is completely distinguishable as it involved allegedly libelous language directed at an appellee, rather than at a court or an officer of the court. Thus, in this case, it was within this court's power to recommend Stilley to the Committee based upon his disrespectful language toward this court, and it was within the Committee's power to determine whether or not Stilley's conduct violated any of the Model Rules.

Moreover, Stilley is incorrect in his assertion that the seventy-page brief was a privileged communication. To support this argument, Stilley relies upon *Howard v. Ward*, 238 Ark. 514, 383 S.W.2d 107 (1964), a case that involved the issues of libel and slander. There, we upheld as absolutely privileged certain language contained in a motion to dismiss that characterized as false and libelous letters written to the husband's commanding officer charging the husband with sex perversion and threatening prosecution for child abandonment. This is completely distinguishable from the present case. Here, Stilley was found to have violated four provisions of the Model Rules based upon language he used in a brief filed with this court that was disrespectful toward an Arkansas court of law. This is prohibited by our rules. *See* Ark. Sup. Ct. R. 1-5. Moreover, this rule has been repeatedly upheld to prohibit disrespectful language directed at both courts and officers of the court.

Lastly, Stilley was not "deprived of any notice whatsoever of the thing prohibited." Rather, Rule 1-5 and our case law gave him more than enough notice that his conduct was not allowed. Furthermore, the oath Stilley took when he received his attorney's license, and that is inscribed on that license, specifically states:

> I will exhibit, and I will seek to maintain in others, the respect due courts and judges.
>
> I will, to the best of my ability, abide by the Model Rules of Professional Conduct and any other standards of ethics proclaimed

by the courts, and in doubtful cases I will attempt to abide by the spirit of those ethical rules and precepts of honor and fair play.

Based upon the foregoing, it is clear that the Committee did not err in its decision to punish Stilley.

### Serious Misconduct

At the close of its brief, the Committee raises a separate issue than those raised by Stilley. Specifically, the Committee argues that, if this court affirms the Committee's decision, then the suspension imposed on Stilley must be considered "serious misconduct," under the rule announced in *Gillaspie v. Ligon*, 357 Ark. 50, 160 S.W.3d 332 (2004), and hereafter use by an attorney of intemperate, strident, and disrespectful language in written submissions to courts will be eligible for the full range of sanctions for either "serious misconduct" or "lesser misconduct," under the Procedures.

Section 17(B) of the Procedures explains in part:

> Serious misconduct is conduct in violation of the Model Rules that would warrant a sanction terminating or restricting the lawyer's license to practice law. Conduct will be considered serious misconduct if any of the following considerations apply:
>
> . . . .
>
> (2) The misconduct results in or is likely to result in substantial prejudice to a client or other person[.]

Section 17(C) of the Procedures further explains that "[l]esser misconduct is conduct in violation of the Model Rules that would not warrant a sanction terminating or restricting the lawyer's license to practice law." Thus, only serious misconduct can be the basis for restricting the practice of law. *See* P. Reg. Prof'l Conduct § 17(E)(2); *Gillaspie*, 357 Ark. 50, 160 S.W.3d 332.

As an initial point, the use of disrespectful language toward a court or officer of the court is not in and of itself serious misconduct, as defined by section 17(B). However, in this case, Stilley's repeated and continuous use of strident disrespectful language constituted serious misconduct. Specifically, Stilley engaged in misconduct that resulted in substantial prejudice to a client. *See* P. Reg. Prof'l Conduct § 17(B)(2).

 Additional support for the conclusion that Stilley's conduct constituted serious misconduct can be found in examining the Model Rules Stilley violated. For example, the Committee concluded that Stilley violated Model Rule 1.7(b) when he placed his own interests as an attorney in conflict with the interests of his client in this matter. In support of this conclusion, the Committee cited to the stricken brief and Stilley's belief that:

> over a ten year period the Court had ruled against him five times, and that he was entitled to an opportunity to confront and interrogate the Court about its perceived hostility toward him, possibly as part of an effort by him to get the justices to recuse from this case and maybe future ones.[6]

Another example is the Committee's finding that Stilley violated Model Rule 8.4(d) because his conduct:

> caused his client's brief to be entirely stricken from the record, delaying proper and full consideration of his client's cause, and causing the Court to expend additional resources and time in considering his brief and then entering an order striking it from the record of the case.

Thus, it is abundantly clear that Stilley's conduct in using disrespectful language toward this court, causing his client's brief to be struck in its entirety, resulted in substantial prejudice to his client. Because Stilley's conduct is "serious misconduct" under section 17(B), his six-month suspension is upheld.

Affirmed.

---

[6] Although Stilley offered the Committee two affidavits from his client Robert White showing that (1) White did not object to Stilley's brief and statement, and (2) White would have used "considerably stronger language," Stilley was expected to behave in accordance with the Model Rules and Rule 1-5 regarding disrespectful language contained in a filed brief.