2010 Ark. 227

**Stark LIGON, Executive Director, Supreme Court Committee on Professional Conduct, Appellant,**

v.

**Frank David REES, Ark. Bar No. 79238, Appellee.**

No. 09–560.

Supreme Court of Arkansas.

May 13, 2010.

Stark Ligon, Executive Director, Committee on Professional Conduct, Little Rock, for appellant.

Friday, Eldredge & Clark, L.L.P., by: Donald H. Bacon and Martin A. Kasten, and Asa Hutchinson Law Group, PLC, by: Asa Hutchinson and Asa Hutchinson, III, Little Rock, for appellee.

RONALD L. SHEFFIELD, Justice.

Appellant Stark Ligon, Executive Director of the Office of Professional Conduct (OPC), appeals from a February 23, 2009 order filed by Panel C of the Supreme Court Committee on Professional Conduct (Committee) finding that David Rees violated Rule 1.8(e) of the Arkansas Model Rules of Professional Conduct.[1] On appeal, the OPC argues that the Committee erred in (1) finding no violation of Rule 1.5(a) in Counts A.1, A.2 and A.4 of the complaint; (2) finding no violation of Rule 1.5(c) in Counts B.1 and B.2; and (3) not implementing a more substantial or appropriate sanction for the overall misconduct proven. This court has jurisdiction pursuant to Ark. Sup. Ct. R. 1–2(a)(5), as this appeal involves the discipline of attorneys. We affirm the Committee's findings.

On November 16, 2006, Kyle Brandon filed a grievance with the OPC regarding Mr. Rees's conduct as an attorney representing Mr. Brandon in a personal-injury claim. The facts of Mr. Brandon's personal-injury claim are as follows. On September 6, 2003, Mr. Brandon was injured in a vehicle collision involving a vehicle owned by Tweedy Contractors (Tweedy). Two days later, he signed a personal-injury contract with the Rees law firm while in a Memphis hospital. The contract provided for a contingent legal fee of 33.33% of any recovery before trial, and 40% if the case went to trial. The Rees law firm advanced money to Mr. Brandon on two different occasions from the Rees law firm funds against any future recovery. The firm advanced Mr. Brandon $1000 on April 24, 2004, which became count C.1 of the complaint. The firm later advanced Mr. Brandon $500 on December 17, 2004, and $100 on November 15, 2005, which became

---

1. This appeal is one of four involving Mr. Rees, submitted to this court for decision and handed down this same day.

counts C.2 and C.3 of the complaint, respectively.

On May 14, 2004, Mr. Brandon was arrested and charged with a felony in Greene County, Arkansas. In mid-summer of 2004, Mr. Brandon also faced felony drug charges in Missouri. Mr. Rees agreed to represent Mr. Brandon in the Greene County felony case for a fee of $25,000 to be withheld from Mr. Brandon's personal-injury recovery. Mr. Brandon was in need of money and contacted Whitehaven P.I. Fund, LLC (Whitehaven), a litigation lender, and received an advance of $20,000 against any possible future recovery from his personal-injury claim against Tweedy. The money was deposited into the Rees law firm trust account and the funds were distributed to Mr. Brandon. In April of 2005, Mr. Rees filed a suit against Tweedy on Mr. Brandon's personal-injury claim. Tweedy filed a $300,000 Offer of Judgment on January 31, 2006, and Mr. Rees and Mr. Brandon settled the claim for that [3] amount in pretrial mediation in February of 2006. On February 17, 2006, Mr. Brandon and Mr. Rees had a meeting to discuss the "settlement sheet" for the $300,000. The settlement sheet reflected a legal fee of $120,000, or 40% of the recovery, rather than the 33.33% percent recovery as provided in the contract. The sheet also listed the advances made by Whitehaven totaling $29,000. With interest, the amount owed to Whitehaven had increased to $71,688. Mr. Rees offered to negotiate this amount down on Mr. Brandon's behalf. Mr. Brandon met again with Mr. Rees's staff members on March 31, 2006, to review the new settlement sheet. The sheet reflected the negotiated reduction in the Whitehaven advances to $55,000, a reduction of $16,000, of which Mr. Rees kept $4653 as his fee. The sheet still showed a contingent legal fee of 40%. Mr. Brandon later claimed that he had pointed out the discrepancy to

members of the firm both times he reviewed the sheet, but Mr. Rees took no action to correct it.

In mid-April of 2006, Mr. Brandon was arrested on another drug matter in Greene County. He contacted Mr. Rees for legal representation on this matter as well. Mr. Rees agreed to take the case for $7392, which was to be taken out of the remaining funds owed to Mr. Brandon from the Tweedy settlement. Mr. Brandon received the $2000 remaining in the account a month or two later. Mr. Brandon later hired a new attorney, Bill Stanley, who took over his criminal case from Mr. Rees. In an effort to avoid another conviction and a prison term, the trial court permitted Mr. Brandon to enter an eighteen-month treatment program.

In November of 2006, while in rehabilitation treatment, Mr. Brandon filed a grievance against Mr. Rees with the OPC, claiming that Mr. Rees overcharged him in the Tweedy [4] settlement. Greg Brandon, Kyle Brandon's uncle, acting as attorney-in-fact for Kyle Brandon, wrote Mr. Rees asking for documents and an explanation regarding the distribution of Mr. Brandon's settlement funds. The OPC requested the same documents from Mr. Rees. Mr. Rees contacted Arlon Woodruff to represent him in this matter. Byron Freeland, an attorney hired by Greg Brandon, raised the issue of the 40% fee with Mr. Rees. Mary Caines and Cynthia Copeland, employees of Mr. Rees, executed affidavits in early 2007 stating that they had mistakenly assumed the Brandon personal-injury case was a 40% fee case but had not checked his contract to verify that fee. On March 21, 2007, Mr. Woodruff sent Mr. Freeland a check from the Rees law firm for $27,500; of that, $20,000 represented the disputed fees and $7,500 was for the fee paid in the second criminal case for

which Mr. Brandon had hired another attorney to represent him.

On June 8, 2007, Mr. Rees sent a letter to the OPC detailing his actions in representing Mr. Brandon and the accompanying fees. The letter included two invoices from National Legal Research (NLR) for legal research conducted on behalf of the firm, one regarding the criminal case and the other the personal-injury case, both of which were charged on the Tweedy "settlement sheet."

On October 11, 2007, a disciplinary complaint was served on Mr. Rees's counsel. The complaint alleged violations of the following Model Rules of Professional Conduct: Rule 1.5(a), which requires that a lawyer's fee be reasonable; Rule 1.5(c), which requires that a contingent-fee agreement be in writing and clearly notify the client of any expenses for which the client will be liable; and Rule 1.8(e), which requires that a lawyer not provide financial assistance to a client in connection with pending or contemplated litigation. The OPC asked that it be awarded costs for the investigation and hearing of the proceedings in this case, fines, and restitution. Mr. Rees filed a response on November 30, 2007, in which he denied any wrongdoing under the Model Rules of Professional Conduct. This court rejected a proposed discipline by consent, which encompassed all four of the complaints. Mr. Rees requested a de novo public hearing pursuant to Section 10.D.3 and Section 11 of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law.

On February 5, 2009, a disciplinary hearing was held in which Mary Caines, Mr. Rees's paralegal from 2006, testified that Mr. Brandon did not raise concerns regarding the 40% fee issue at either settlement review. She also stated that it was her experience that when Mr. Rees would negotiate down a presettlement funding lien, such as with Whitehaven, the client received 100% of the savings. Mr. Rees did not testify. The Panel reviewed the two NLR invoices submitted as exhibits. The OPC also introduced the testimony of Judge Burnett from a previous case involving Mr. Rees. Judge Burnett testified that he was approached by Mr. Rees with a job offer as well as an offer to discuss accommodating any future political-office plans should he come work for Mr. Rees.

The Committee found that Mr. Rees committed three violations of Rule 1.8(e) of the Arkansas Rules of Professional Conduct, which prohibits certain financial assistance to clients, because of the advances made to Mr. Brandon from the Rees law firm funds. The Committee found no violations of Rule 1.5(a) and (c) regarding excessive or unreasonable fees. It sanctioned Mr. Rees with a "caution" and a $1000 fine and ordered him to pay $417.80 in costs for the hearing. The OPC filed a notice of appeal on March 16, 2009.

We have previously stated our standard of review with regard to findings of the Committee as follows:

Pursuant to Section 12(B) of the Procedures, on appeal, this court carries out a *de novo* review on the record. A *de novo* review on the record determines whether the factual findings were clearly erroneous, or whether the result reached was arbitrary or groundless. Due deference is given to the Committee's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. However, conclusions of law are given no deference on appeal. The Committee's findings of fact will not be reversed unless the findings are clearly erroneous, and the action taken by the Committee will be affirmed unless it is

clearly against the preponderance of the evidence.

*Stilley v. Sup. Ct. Comm. on Prof'l Conduct,* 370 Ark. 294, 301, 259 S.W.3d 395, 399 (2007) (citations omitted). Furthermore, a finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.*

For its first point on appeal, the OPC argues that the Committee clearly erred in finding no violation of Arkansas Rule of Professional Conduct 1.5(a) and (c) in Counts A.1., A.2, A.4., B.1, and B.2. The counts state that Mr. Rees took an additional and excessive legal fee of $4653 for negotiating a reduction in the amount charged by Whitehaven, and that the 40% contingency fee and the charge for research done and billed by NLR were unreasonable. The OPC claims that the Committee should have found that Mr. Rees violated the rule alleged in these counts and that its decision was clearly erroneous and against the preponderance of the evidence. Mr. Rees counters that the fee he charged for representing Mr. Brandon was reasonable considering his experience and the time involved in negotiating the personal-injury claim and the reduction in the presettlement funding lien. He also argues that this court should uphold the findings of the Committee as his actions were found to be reasonable by the Committee.

Rule 1.5 of the Arkansas Rules of Professional Conduct states,

(a) A lawyer's fee shall be reasonable. A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

. . . .

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the

remittance to the client and the method of its determination.

Ark. R. Prof'l Conduct 1.5. This court has previously discussed the reasonableness of fees in *Arens v. Committee on Professional Conduct*, 307 Ark. 308, 820 S.W.2d 263 (1991). In *Arens,* this court stated,

> The fact that a fee may be high does not alone make the fee unreasonable.... However, the amount of a retainer is not the sole consideration in determining whether a fee is reasonable. If a lawyer charges a reasonable retainer and is retained for the purpose of providing specified services, but never performs those services, the fee charged would become unreasonable. Just as a lawyer cannot bill a client for work he has never performed in the past, a lawyer cannot bill a client for work he will never perform in the future.

*Id.* at 310–11, 820 S.W.2d at 265. In *Arens*, this court held that the fees were not unreasonable because of the amount charged, but because the lawyers had failed to do the work.

In the case at hand, the OPC claims that the Committee clearly erred in not finding that Mr. Rees violated Rule 1.5 on several counts. We do not agree. Although Mr. Rees did charge more than what he originally contracted to charge in representing Mr. Brandon, he rectified the situation and reimbursed the client, albeit after the grievance was filed. Furthermore, the Committee found, by unanimous vote, that the actions of Mr. Rees did not violate Arkansas Rule of Professional Conduct 1.5 with respect to charging or collecting an unreasonable fee. At the hearing, Mr. Brandon testified that he brought this issue to the attention of the firm on two separate occasions. Whether the Committee considered Mr. Brandon's testimony in making its decision is unclear from the record but, under our standard of review, issues of credibility of witnesses are left to the Committee because they are in a better position to make such a determination. Based on the facts presented, the Committee did not clearly err in finding no violations with respect to Arkansas Rule of Professional Conduct 1.5.

For the final point on appeal, the OPC argues that the Committee's sanction against Mr. Rees for violation of Rule 1.8(e) on counts C.1, C.2 and C.3, was not proportional to the violation. The OPC claims that Mr. Rees's conduct warranted a stronger sanction. Section 17 of the Procedures Regulating Professional Conduct of Attorneys prescribes the types of sanctions that can be imposed on an attorney, as well as the type of misconduct that would be considered "serious" and "lesser" misconduct:

> B. Serious Misconduct. Serious misconduct is conduct in violation of the Model Rules that would warrant a sanction terminating or restricting the lawyer's license to practice law. Conduct will be considered serious misconduct if any of the following considerations apply:
>
> (1) The misconduct involves the misappropriation of funds;
>
> (2) The misconduct results in or is likely to result in substantial prejudice to a client or other person;
>
> (3) The misconduct involves dishonesty, deceit, fraud, or misrepresentation by the lawyer;
>
> (4) The misconduct is part of a pattern of similar misconduct;
>
> (5) The lawyer's prior record of public sanctions demonstrates a substantial disregard of the lawyer's professional duties and responsibilities; or
>
> (6) The misconduct constitutes a "Serious Crime" as defined in these Procedures.

C. Lesser Misconduct. Lesser misconduct is conduct in violation of the Model Rules that would not warrant a sanction terminating or restricting the lawyer's license to practice law.

D. Types of Sanctions. Misconduct shall be grounds for one or more of the following sanctions:

(1) DISBARMENT: The termination of the lawyer's privilege to practice law and removal of the lawyer's name from the list of licensed attorneys.

(2) SUSPENSION: A limitation for a fixed period of time on the lawyer's privilege to engage in the practice of law.

(3) INTERIM SUSPENSION: A temporary suspension for an indeterminate period of time of the lawyer's privilege to engage in the practice of law pending the final adjudication of a disciplinary matter.

(4) REPRIMAND: A severe public censure issued against the lawyer.

(5) CAUTION: A public warning issued against the lawyer.

(6) WARNING: A nonpublic caution issued against the lawyer.

(7) PROBATION: Written conditions imposed for a fixed period of time, and with the lawyer's consent.

Ark. Sup. Ct. P. Regulating Prof'l Conduct § 17(B), (C), (D). The Committee has also adopted a penalty phase in which it will consider mitigating and aggravating factors in determining appropriate sanctions once a Panel finds that the rules have been violated. *See Ligon v. Dunklin,* 368 Ark. 443, 247 S.W.3d 498 (2007).

In the case at hand, the OPC claims that, under Section 17 of the Procedures Regulating Professional Conduct, Mr. Rees's conduct warrants a stronger sanction and suggests a reprimand. Furthermore, the OPC asserts that the Committee should have taken into consideration aggravating factors. Specifically, he asks that the court consider the conduct of Mr. Rees with respect to his actions toward Judge Burnett in offering him a position with his firm. Judge Burnett testified at one of the hearings regarding this conduct. However, as Mr. Rees argues, during the sanction phase the OPC did not assert this conduct as an aggravating factor warranting a more substantial sanction. Therefore, it is now barred from raising this issue on appeal for the first time. To do so, would deny Mr. Rees an opportunity to introduce any mitigating factors that would warrant a lesser sanction.

Further, the Committee only found Mr. Rees in violation of Rule 1.8(e), which prohibits a lawyer from providing financial assistance to a client in connection with pending or contemplated litigation. The Committee determined that the "caution" and $1000 fine were appropriate sanctions given the nature of Mr. Rees's conduct. We do not find these sanctions inappropriate. Based on our review of the issues on appeal, we affirm the findings and sanctions of the Committee.

Affirmed.