2010 Ark. 225

**Stark LIGON, Executive Director of the Supreme Court Committee on Professional Conduct, Appellant,**

v.

**Frank David REES, Arkansas Bar No. 79238, Appellee.**

No. 09–556.

Supreme Court of Arkansas.

May 13, 2010.

Rehearing Denied June 24, 2010.

Stark Ligon, Supreme Court Comm. on Prof'l Conduct, Little Rock, for appellant.

Friday, k Eldredge & Clark, LLP, by: Donald H. Bacon and Martin A. Kasten, and Asa Hutchinson Law Group, PLC, by:

Asa Hutchinson and Asa Hutchinson, III, Little Rock, for appellee.

PAUL E. DANIELSON, Justice.

Appellant Stark Ligon, Executive Director of the Supreme Court Committee on Professional Conduct, appeals from the order of the Committee suspending appellee David Rees's license to practice law for thirty days, to be served consecutively to a forty-two-day suspension ordered in another Committee action, CPC 2006–156.[1] Mr. Ligon asserts seven points on appeal: (1) that the thirty-day suspension imposed was inappropriate and not proportionately severe enough for the misconduct proven; (2) that the Committee's failure to find a violation of Model Rule of Professional Conduct 8.4(c) as charged in Count G.1 of the complaint against Mr. Rees was clearly erroneous; (3) that the Committee's failure to find a violation of Rule 8.4(c) as charged in Count G.2 was clearly erroneous; (4) that the Committee's failure to find a violation of Rule 8.4(c) as charged in Count G.5 was clearly erroneous; (5) that the Committee's failure to find a violation of Rule 1.2(a) as charged in Count A.2 was clearly erroneous; (6) that the Committee's failure to find a violation of Rule 1.2(a) as charged in Count A.3 was clearly erroneous; and (7) that the Committee's failure to vote on and return a finding as to Count H.2 was error. We affirm the Committee's findings and modify the suspension of Mr. Rees's law license to one year, with credit for thirty days already served.

The underlying facts are best set forth by the Committee in its order, and neither party appears to challenge that synopsis:

[O]n April 7, 2003, Teahna Mooney of Jonesboro was involved in a two vehicle collision on the I–55 Mississippi River Bridge at Memphis. Ms. Mooney was a passenger in a commercial transit van vehicle owned and operated by Sonrise Shuttle, Inc. and driven by Emerson George. The van struck the rear of the forward vehicle, a tractor truck-trailer owned by Ruan Transportation, causing major injury to Ms. Mooney. At the time of the accident, Ms. Mooney was in a personal Chapter 13 bankruptcy, No. 02–bk–15395. On April 16, 2003, Ms. Mooney signed an employment agreement with Pocahontas attorney David Throesch to represent her in her claims from April 7, 2003, against Sonrise, Emerson George, Ruan, and its driver. On August 5, 2003, the bankruptcy court approved the employment of Mr. Throesch by Ms. Mooney for this purpose. On August 19, 2003, her bankruptcy case was closed, and it has not been reopened.

In late August 2003, Throesch took Mooney to see Rees. On August 26, 2003, she signed a Personal Injury Contract with the Rees Law Firm for a fee of 40% of any recovery before trial and 45% of any recovery made at trial. Thereafter, Rees was the lead attorney in her matter until he filed his motion to substitute counsel on September 9, 2004, and the court order granting Rees['s] motion was filed September 22, 2004.

In late January 2004, Rees also entered into a representation agreement with Emerson George regarding an injury to his wife in a possible medical malpractice action for him. Ms. George subsequently died. Emerson George

1. This appeal is one of four involving Mr. Rees, submitted to this court for decision and handed down this same day. *See Ligon v. Rees*, 2010 Ark. 223, 364 S.W.3d 19 (No. 09–555); *Ligon v. Rees*, 2010 Ark. 226, 364 S.W.3d 7 (No. 09–559); *Ligon v. Rees*, 2010 Ark. 227, 364 S.W.3d 1 (No. 09–560).

was the at-fault driver of the vehicle in which Ms. Mooney was injured in April 2003. Rees sued George in March 2004 as a defendant in the Mooney case, a time frame within which Rees also represented George. Neither Mooney nor George were informed by Rees as to this dual representation, and neither consented to or waived the conflict Rees had.

When Mr. Throesch took Ms. Mooney to meet Mr. Rees on August 26, 2003, Rees arranged for her to receive financial assistance prohibited by Model Rule 1.8(e) (2002), in the form of an apartment at 1806 Kim Street in Jonesboro, Arkansas, rented to her by Rees's brother Robert Rees through the brother's business entities. She had no funds to acquire a place to live. On her application form she listed that she had no income and was unemployed. Rees referred his new client to his brother. On August 26, 2003, the very day she met with Robert Rees, she was able to sign a Lease Agreement for one year with a corporation he owned. She also signed a Promissory Note agreeing to pay the corporation a total of $9,866.67, which included the $700 monthly rent, a $350 deposit, and a $1,000 pet deposit, all due twelve (12) months later. Robert Rees wrote David Rees on September 26, 2003, showing that he understood her Note would be paid out of the proceeds of her lawsuit David Rees was handling. David Rees wrote back that he would protect his brother['s] lien out of her settlement. Ms. Mooney was personally out of the apartment by February 2005, after Rees ceased to be her attorney in her case. Her daughter may have stayed there until May 2005. Thereafter Bob Rees communicated with Arlon Woodruff about the apartment arrangement. Bob Reese submitted a final bill dated October 24, 2005, in the amount of $21,316.67 to Mr. Woodruff. This bill included a $50.00 monthly late charge for every month Ms. Mooney, or her daughter, was in the apartment or the lease may have continued to be in Ms. Mooney['s] name from September 2003 through October 2005, an additional total of $1,300 against her account. The arrangement for her to get the apartment was understood from the inception by all that she would not be able to pay anything until she made a recovery in her lawsuit. Mr. Woodruff compromised Robert Rees['s] claim down to $15,000 and paid Mr. Rees that amount from Mooney['s] recovery in November 2005.

Also on August 26, 2003, when Rees signed Mooney as a firm client, he arranged for and personally guaranteed a loan of $7,500 for her at Regions Bank in Jonesboro, for her personal use. When the loan was renewed or refinanced in August 2004, Rees again personally guaranteed her loan, Rees paid the accrued interest [sic]. When she obtained a recovery in November 2005, the Regions Bank loan was finally paid off in the amount of $8,327.45. These bank loans Rees arranged and personally guaranteed were financial assistance to a client prohibited by Model Rule 1.8(e) (2002).

In late December 2003 an incident occurred between Ms. Mooney and Rees at his law office that she characterized as unwanted sexual harassment by him toward her. Rees acknowledged that something of an improper nature occurred. A Release prepared by Rees was signed by Ms. Mooney in another Jonesboro attorney['s] office, selected by Rees, on September 20, 2004. This Release covered both the alleged sexual harassment and malpractice. Ms. Mooney signed this release under duress,

according to her and her handwritten notation on the Release. On behalf of his client David Rees, the other attorney caused to be delivered at that time to Ms. Mooney a check for $1,000.00. Ms. Mooney was not represented by any independent counsel in the matter at the time. She was not satisfied with the deal, so stated, and did not negotiate the $1,000 check until around November 15, 2004.

A new form of a Release limited to the sexual harassment allegation was drafted, which provided for a total payment of $4,000.00 to Ms. Mooney and did not give Rees or his law firm the blanket release from any liability for any of her possible claims for legal or professional malpractice or negligence that was in the release executed on September 20, 2004. A modified release form was transmitted by mail from the Jonesboro attorney to Mr. Woodruff on October 26, 2004. A Rees law firm check for the additional $3,000.00 was issued on or about November 1, 2004. Mr. Woodruff, her new attorney, presented Ms. Mooney with the new Release and the Rees $3,000.00 check at a hearing in her case on November 1, 2004. Mooney signed the modified Release then, and received the second check. She then deposited both checks and they cleared the respective banks on November 15, 2004. No signed copy of the $4,000 Release has been produced by anyone.

The materials Mr. Woodruff supplied the Office of Professional Conduct also include a form of a two page Affidavit and Release for Ms. Mooney, drafted in Rees['s] law office but never executed. This document states, in part, "upon my Christian word . . . in no way has he (Rees) engaged in sexual banner[sic], improper touching, improper behavior and neither have I." Mr. Woodruff's

February 21, 2007 e-mail confirms this document was drafted in the Rees office.

The wife of Emerson George suffered an adverse medical result at a Jonesboro hospital on January 23, 2004. Emerson George and some of his family members came to Rees, on or about January 30, 2004, to discuss his representation of Mr. George on a possible claim for medical negligence in his wife's matter. On January 30, 2004, Rees executed a Temporary Agreement with Emerson George, as the client, and the Agreement was also signed then by other George family members, including his daughter Phyllis George Morphis and her husband Barry, giving the Rees Law Firm ninety (90) days thereafter to investigate the claim and determine if Rees wished to proceed with the representation. The Rees firm was given a 45% contingency fee of any recovery if the matter was resolved during this time period. Rees did not disclose to Mr. George that he already represented Teahna Mooney, and that his firm was then at work on a lawsuit for her in which Emerson George would be a key defendant. Mrs. George died on April 12, 2004.

On March 26, 2004, a Complaint for Teahna Mooney, signed by David Rees, was filed in Craighead County Circuit Court as Case No. CIV–2004–219, styled *Teahna Mooney v. Sonrise Shuttle Service, Inc., Emerson George, Ruan Transportation Management Systems, Inc. d/b/a Ruan Transport Corporation, and Edward Acord.* The case was assigned to Circuit Judge David Laser of Jonesboro. Rees caused a summons to be issued for Emerson George, and it was served on George by process server on April 5, 2004. Shortly after being served by Rees, Emerson George brought Rees the suit papers Rees had caused to be served on him, asking Rees

what they were. Rees claimed that for the first time he realized his office had sued another firm client, Emerson George.

The Memphis law firm of Glassman, Edwards, Wade & Wyatt, through Carl Wyatt and Russell Wood, entered the case as counsel for Sonrise and George. On April 26, 2004, Rees wrote Carl Wyatt about the George–Mooney representation situation. Rees stated at that time that he was still actively investigating Mr. George's medical malpractice claim, to the extent that he was having a medical expert review the case, and was in the process of setting up an estate for the deceased spouse. Rees acknowledged the conflict situation he was then in with regard to Emerson George when he stated to Mr. Wyatt that Rees would need to deal with someone else (on Mr. George's malpractice claim) and make sure Mr. George did not come into the Rees office during the pendency of the Mooney claim. The ninety (90) days of the Rees Temporary Agreement with Emerson George would not expire until about April 30, 2004. On July 20, 2004, Rees finally wrote Mr. George informing him that Rees did not feel George had a medical malpractice claim in his late wife's matter and that the Rees office would not be able to represent George in any such claim.

By August 2004 there was consideration being expressed by Rees to opposing counsel about Rees taking the deposition of Emerson George in Ms. Mooney's lawsuit, which was set for jury trial to start on November 8, 2004. On September 7, 2004, Rees wrote Mr. Wyatt and provided him with an Affidavit containing Rees's version of the events surrounding his concurrent George–Mooney representation. On that date, Rees also filed a motion for voluntary non-suit with prejudice as

to only defendant Emerson George in the *Mooney v. Sonrise* case. Rees procured an Order for Voluntary Non-suit With Prejudice Against Separate Defendant Emerson George, also signed September 7, 2004, by Jonesboro Circuit Judge Larry Boling, a judge to whom the *Mooney* case was not assigned, and had the Order filed September 8, 2004. In the meantime, Emerson George had consulted with attorney Kent Rubens to represent George regarding any issues George had with Rees as a result of the apparent conflict of interest Rees had between his client, Ms. Mooney, and his now-former client Emerson George.

Without fully informing her of the likely consequences of his dismissal of Mr. George from her suit, if Rees recognized the likely consequences at the time, Rees dismissed Mr. George with prejudice as a defendant in Ms. Mooney's suit in early September 2004. On September 9, 2004, without fully informing Ms. Mooney of the nature of the situation Rees had created with the Emerson George matter, Rees selected and substituted Arlon Woodruff for Rees as Mooney's attorney in her lawsuit, which was set to go to trial on November 8, 2004. As a result of Rees['s] dismissal of Mr. George, Ms. Mooney's case against Mr. George's deep pocket employer, Sonrise, was seriously jeopardized by a motion filed for Sonrise. On November 1, 2004, Mr. Woodruff was able to salvage Mooney's case against Mr. George's employer by getting the judge to set aside Rees's action dismissing Mr. George as a defendant in the *Mooney* case.

On or about September 9, 2004, Rees signed and filed a motion for substitution of counsel for Teahna Mooney in the *Mooney* case, stating Ms. Mooney

had retained new counsel, Arlon Woodruff, who thereafter represented Ms. Mooney in her suit. Arlon Woodruff was presented to Ms. Mooney by Rees. Mr. Woodruff was at that time representing Mr. Rees in several personal matters.

On September 21, 2004, Sonrise filed a motion to dismiss the *Mooney* suit as to Sonrise, claiming that, with the Rees non-suit with prejudice order as to its driver, Emerson George, it was now entitled to be dismissed from the lawsuit under Arkansas law based on the theory of *respondeat superior*. This motion was heard by Judge Fogleman on November 1, 2004, and denied. Mr. Woodruff's motion for Ms. Mooney to set aside the order of dismissal with prejudice as to Mr. George that Rees had filed was granted. As a result, Emerson George was brought back into the *Mooney* suit as a defendant. In the transcript from November 1, 2004 hearing, Judge Fogleman asked if Mr. Rees had been reported, and Russell Wood replied that Emerson George and Kent Rubens were handling that portion of the matter. Judge Fogleman referred the matter of Rees's Emerson George conflict to the Committee by letter on March 3, 2005.

On March 12, 2007, Mr. Ligon issued a twenty-one page complaint against Mr. Rees, which alleged twenty-one separate violations of the Model Rules of Professional Conduct.[2] After several extensions, Mr. Rees filed his response to the complaint on September 10, 2007. In his response, Mr. Rees denied that his conduct violated Rules 1.2(a), 1.4(d), 1.7(b), 1.8(h), and 8.4(c). However, he admitted that his conduct: (1) "technically" violated Rule 1.7(a) in that he impermissibly represented one client who sued another; (2) violated Rule 1.8(e) in that he referred Ms. Mooney to his brother for housing, told his brother he would protect his lien from the proceeds of Ms. Mooney's anticipated judgment, and helped Ms. Mooney by personally guaranteeing a loan from Regions Bank;[3] and (3) violated Rule 8.4(d) in that he unintentionally took actions that "necessitate[d] additional court time to correct the mistake with respect to the dismissal of Mr. George."

On November 30, 2007, Mr. Rees's counsel conditionally offered certain terms for a proposed discipline by consent. The proposed discipline by consent addressed each of the four cases that were then pending against Mr. Rees. The record reflects that Mr. Ligon made a counteroffer involving all four cases, and, ultimately, a proposed "global" discipline by consent involving a license suspension was approved by a panel of the Committee and submitted to this court for approval. However, by way of a letter from Chief Justice Hannah, this court declined to approve the proposed global consent resolution and returned the matter to the Committee for further consideration.

On July 25, 2008, Mr. Rees was notified by letter of the findings and an order by a

---

**2.** The Model Rules were in effect prior to May 1, 2005, when the current Arkansas Rules of Professional Conduct went into effect pursuant to an order of this court. *See In re Arkansas Bar Assoc.—Petition to Revise the Arkansas Rules of Professional Conduct*, 361 Ark. App'x 451 (per curiam).

**3.** Mr. Rees stated:

> I personally did not lend [Ms. Mooney] money which obviously would have been providing financial assistance. Although a personal guarantee is not actually the same as providing money to a client, and I know of no case law defining "financial assistance," it is a reasonable interpretation to conclude that providing a personal guarantee is financial assistance.

panel of the Committee and that he had a right to a public hearing before a different panel. On August 11, 2008, Mr. Rees filed a request for a de novo hearing and requested a stay of the panel's action. Accordingly, the Committee issued an order setting the instant matter, as well as the three other pending matters, for individual and separate hearings during February 3–5, 2009. A pretrial conference was had on all four cases on January 13, 2009, and the hearings on all four cases, including the subject of this appeal, were held as previously scheduled.

On February 23, 2009, the Committee's findings and order were filed with this court's clerk. In the order, the Committee made the following findings with respect to each of the rule violations set forth in the complaint. Specifically, the Committee found:

1. By a unanimous vote, the conduct of Frank David Rees did not violate Model Rule 1.2(a) as alleged in Counts A.1, A.2, and A.3 of the Complaint.

2. By a unanimous vote, the conduct of Frank David Rees violated Model Rule 1.4(b), Count B.1 of the Complaint, in that if Mr. Rees had advised his client Emerson George on or after January 30, 2004, of Rees['s] prior and existing representation of Teahna Mooney, and that Rees would soon have to sue Mr. George on behalf of Ms. Mooney, and would not be able to give Rees['s] full loyalty to Mr. George on the matter George was entrusting to Rees, Mr. George would have had an opportunity to consider employing other counsel to represent him, or his late wife['s] estate, in any claim for medical negligence arising from her death. Model Rule 1.4(b) requires that a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

3. By a unanimous vote, the conduct of Frank David Rees violated Model Rule 1.4(b), Count B.2 of the Complaint, in that if Mr. Rees had advised Teahna Mooney (now Goodson) on or after January 30, 2004, that he had accepted legal employment, even temporarily, of Emerson George, a necessary and critical party defendant in the lawsuit Rees was about to file for her, that this new representation would cause Rees to have a conflict of interest between Ms. Mooney and Mr. George, and that Rees['s] representation of Mr. George would likely cause major problems for Ms. Mooney['s] litigation, and that Rees would not be able to give his full loyalty to Ms. Mooney in her matter under these circumstances, she would have had an opportunity in early 2004 and thereafter to consider employing other counsel to represent her and receive the loyal representation to which she was entitled. Model Rule 1.4(b) requires that a lawyer shall explain a matter to the extent reasonable necessary to permit the client to make informed decisions regarding the representation.

4. By a unanimous vote, the conduct of Frank David Rees violated Model Rule 1.7(a), Count C.1 of the Complaint, in that his acceptance of the representation of Emerson George in late January 2004 in the matter involving George['s] wife was directly adverse to Rees['s] representation commenced months earlier in August 2003 of Teahna Mooney, which would eventually involve interests directly adverse to those of Emerson George. Teahna Mooney was not told in early 2004 of Rees['s] new representation of Emerson George and therefore could not and did not consent to Rees['s] representation of Mr. George while Rees also represented Ms. Mooney. Rees could not have reasonably believed his representation of Ms. Mooney would not

adversely affect his relationship with Mr. George, also Rees['s] client, as Rees would almost surely have to sue Mr. George to maintain a cause of action against his employer, Sonrise Shuttle, the owner of the vehicle he was driving and in which Ms. Mooney was injured. Model Rule 1.7(a) provides that a lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless: (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) each client consents after consultation.

5. By a unanimous vote, the conduct of Frank David Rees violated Model Rule 1.7(b), Count D.1 of the Complaint, in that he could not adequately and loyally represent Emerson George at the same time Rees represented Teahna Mooney, as his representation of and responsibility to Ms. Mooney materially limited his ability to fairly and independently represent Mr. George in his matter. Mr. George was not informed by Rees at the time in late January 2004 of Rees['s] prior representation of Teahna Mooney and therefore George could not and did not consent to Rees['s] representation of George['s] interests while Rees still represented Ms. Mooney. Rees could not continue to represent Emerson George at the same time he represented Teahna Mooney, as Rees['s] representation of and responsibility to Ms. Mooney materially limited his ability to fairly and independently represent Mr. George, as Rees would soon be required to sue George in behalf of Mooney. Model Rule 1.7(b) provides that a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably be-

lieves the representation will not be adversely affected; and (2) the client consents after consultation.

6. By a unanimous vote, the conduct of Frank David Rees violated Model Rule 1.7(b), Count D.2 of the Complaint, in that Mr. Rees could not continue to represent Emerson George at the same time he represented Teahna Mooney, as Rees['s] representation of and responsibility to Ms. Mooney materially limited Rees['s] ability to fairly and independently represent Mr. George, as Rees would soon be required to sue George in behalf of Mooney. Model Rule 1.7(b) provides that a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation.

7. By a unanimous vote, the conduct of Frank David Rees violated Model Rule 1.7(b), Count D.3 of the Complaint. There was no informed consent by Ms. Mooney after consultation. Model Rule 1.7(b) provides that a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation.

8. By a unanimous vote, the conduct of Frank David Rees violated Model Rule 1.8(e), Count E.1 of the Complaint, in that Mr. Rees arranged for and participated in the provision of financial assistance, an apartment provided by his

brother during the pendency of her litigation while Rees was her lead attorney, to his client Teahna Mooney that was prohibited by ethical rule. His brother Robert Rees['s] firm provided Ms. Mooney an apartment at $700 per month rental from August 2003 to some date in late 2005, based on a Note she signed on August 26, 2003, that was understood by all involved, including David Rees, would be paid when she obtained a recovery in the litigation he was handling for her at the time. David Rees referred Ms. Mooney to his brother for this purpose. When her suit was concluded and recovery realized, a negotiated sum of $15,000 was paid to Robert Rees for the apartment she used, while others who provided Ms. Mooney services that were not prohibited as financial assistance, such as health care providers, went unpaid. Model Rule 1.8(e) provides that a lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that: (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and (2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

9. By a unanimous vote, the conduct of Frank David Rees violated Model Rule 1.8(e), Count E.2 of the Complaint, in that on August 26, 2003, the date David Rees signed her up as a client, Regions Bank of Jonesboro made a personal loan to Teahna Mooney, account # 0021072, in the principal amount of $7,575.00, at 5.595% APR, due August 5, 2004. $7,500.00 in loan proceeds were issued to her in a lender check. This loan was personally guaranteed by David Rees. Ms. Mooney had never done business with Regions Bank prior to this occasion. She was unemployed and had no foreseeable means of assets with which to repay this loan. Guaranteeing this loan was financial assistance to a Rees client prohibited by Rule 1.8(e). Model Rule 1.8(e) provides that a lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that: (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and (2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

10. By a unanimous vote, the conduct of Frank David Rees violated Model Rule 1.8(e), Count E.3 of the Complaint, in that the Regions Bank loan, with account # 0023764, to Teahna Mooney for personal purposes was renewed or refinanced on August 24, 2004, in the principal amount of $7,675.00, at 15.404% APR, due January 15, 2005. This loan was personally guaranteed by David Rees. $7,575.00 of this loan was used to pay Ms. Mooney['s] previous loan, account # 0021072. Guaranteeing this loan by Mr. Rees was financial assistance to his client prohibited by Rule 1.8(e). Model Rule 1.8(e) provides that a lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that: (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and (2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

11. By a unanimous vote, the conduct of Frank David Rees violated Model Rule 1.8(e), Count E.4 of the Complaint, in that on August 30, 2004, Rees Law Firm check # 44745 for $438.40

was issued to Regions Bank to pay the interest on Ms. Mooney['s] loan there, account # 0023764. Paying Mooney['s] interest on this loan was financial assistance to a Rees client prohibited by Rule 1.8(e). Model Rule 1.8(e) provides that a lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that: (1) a lawyer may advance court costs and expenses of litigation the repayment of which may be contingent on the outcome of the matter; and (2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

12. By a unanimous vote, the conduct of Frank David Rees violated Model Rule 1.8(h), Count F.1 of the Complaint, in that on September 22, 2004, the trial court entered the order substituting Arlon Woodruff for Rees as attorney for Teahna Mooney in her litigation against Sonrise. Prior to that date, and specifically on or about September 20, 2004, either Rees or his agent and attorney for that purpose obtained a general release of liability from Rees['s] client, Teahna Mooney, for any and all claims she may have had against Rees and his law firm arising out of the lawsuit in which Rees represented her, including claims for sexual harassment, assault and battery and outrage, in exchange for a payment of $1,000 at the time, later increased to $4,000. Rees did not advise Ms. Mooney in writing that independent legal representation for her was appropriate in connection with the Release he caused to be presented to her and which she executed, under duress. Model Rule 1.8(h) provides that a lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

13. By a unanimous vote, the conduct of Frank David Rees did not violate Model Rule 8.4(c), Count G.1 of the Complaint.

14. By a unanimous vote, the conduct of Frank David Rees did not violate Model Rule 8.4(c), Count G.2 of the Complaint.

15. By a unanimous vote, the conduct of Frank David Rees did not violate Model Rule 8.4(c) Count G.3 of the Complaint.

16. By a unanimous vote, the conduct of Frank David Rees did not violate Model Rule 8.4(c), Count G.4 of the Complaint.

17. By a unanimous vote, the conduct of Frank David Rees did not violate Model Rule 8.4(c) Count G.5 of the Complaint.

18. By a unanimous vote, the conduct of Frank David Rees violated Model Rule 8.4(d), Count H.1 of the Complaint, in that Mr. Rees's legal maneuvers in the *Mooney v. Sonrise* case to try to get Emerson George out of the case as a defendant necessitated additional court time and effort to thereafter correct and resolve the problem Rees created that almost cost Ms. Mooney her case against Sonrise, after Rees obtained an order of voluntary non-suit with prejudice by Ms. Mooney as to Mr. George on September 8, 2004. Model Rule 8.4(d) requires that a lawyer shall not engage in conduct that is prejudicial to the administration of justice. Mr. Rees admitted a violation of Model Rule 8.4(d).

19. Having found a violation of Rule 8.4(d), in Count H.1 of the Complaint, the panel did not vote separately on Count H.2.

Based on these findings, and as already noted, the Committee suspended Mr. Rees's law license for thirty days, to be served consecutively with a forty-two-day suspension previously ordered. In addition, Mr. Rees was ordered to pay $676.60 in costs.

 Mr. Ligon now appeals the order of the Committee.[4] Pursuant to section 12(B) of the Procedures, our standard of review when reviewing a decision of the Committee is de novo ⌐₁₃on the record. *See also Jenkins v. Ligon,* 2010 Ark. 24, 2010 WL 199649. A de novo review on the record determines whether the factual findings were clearly erroneous, or whether the result reached was arbitrary or groundless. *See Stilley v. Supreme Court Comm. on Prof'l Conduct,* 370 Ark. 294, 259 S.W.3d 395 (2007). Due deference is given to the Committee's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *See id.* However, conclusions of law are given no deference on appeal. *See id.* The Committee's findings of fact will not be reversed unless the findings are clearly erroneous, and the action taken by the Committee will be affirmed unless it is clearly against the preponderance of the evidence. *See id.*

## I. Thirty–Day Suspension

Mr. Ligon argues as his first point on appeal that the Committee's thirty-day suspension of Mr. Rees's law license was disproportionate to his conduct. He contends that the Committee properly dealt with many of the allegations, but urges that Mr. Rees's unwanted sexual advances against Ms. Mooney should be an ethical violation as well. Mr. Ligon then proceeds to develop for this court two matters that he considers to be further evidence of Mr. Rees's past sexual exploits. While acknowledging that this court did not adopt a specific prohibition against a lawyer having sexual relations with a client until May 1, 2005, and that Mr. Rees's conduct in the instant case had to be charged using a combination of several then-existing rules, Mr. Ligon contends that Mr. Rees's conduct requires a much more substantial sanction than he received to deter him and other attorneys ⌐₁₄from engaging in such egregious behavior with vulnerable clients. Mr. Ligon concludes that this court should impose a more appropriate sanction based on Mr. Rees's sexual exploits and suggests a sanction in line with jurisprudence from another jurisdiction.

Mr. Rees responds that as to the conflict-of-interest violations, there was plenty of evidence to show that his conduct was done mistakenly, rather than intentionally. He further asserts that the Committee's finding that he did not sufficiently explain the conflicts of interest to his clients does not require a longer suspension, as there was no evidence that his failure to do so caused any harm to either client. Mr. Rees contends that the alleged sexual-harassment incident presented the Committee with a significant factual conflict, which he claims it resolved on the credibility of the witnesses. He further maintains that his compassion for Ms. Mooney led to his financial-assistance violations and that he was required to defend against stale allegations, due to the length of time between his conduct and the filing of the complaint against him. He urges that his violations may have been the product of mistake, negligence, and poor judgment, but they did not involve intentional mis-

---

**4.** The record reflects no notice of appeal filed by Mr. Rees in this case.

conduct. He finally submits that this court should deem Mr. Ligon's presentation of matters outside of the record as improper and disregard them, as neither of the matters raised by Mr. Ligon in his brief were presented to the Committee.

▪ As an initial matter, we will not consider those matters outside of the record and raised by Mr. Ligon regarding alleged prior sexual exploits of Mr. Rees, as those matters were not before the Committee.[5] This court has previously held that an invitation by Mr. Ligon to this court to look outside the record to matters not before the factfinder was improper argument. *See Ligon v. Walker*, 2009 Ark. 136, 297 S.W.3d 1. While Mr. Ligon attempts to circumvent our prior holding by asking this court to take judicial notice of the alleged prior incidents, we decline to do so. This court's review, as set forth above, is of the Committee's decision, which was based on the evidence presented to the Committee by Mr. Ligon. Had he wished to present such evidence in support of the allegations against Mr. Rees, the time to do so was at the hearing before the Committee. This court will not consider new evidence merely because it was not previously known or became available to Mr. Ligon after the Committee's decision. Accordingly, we reject Mr. Ligon's attempts to increase Mr. Rees's sanction based on such evidence.

▪ That being said, we cannot say that the Committee's sanction of a thirty-day suspension takes into account the seriousness of Mr. Rees's conduct in the instant case. Pursuant to the Procedures, "[s]uspension [of a lawyer's privilege to practice law] is appropriate when a panel of the Committee finds that the lawyer has engaged in 'serious misconduct,' and, consonant with the pertinent factors enunciated in Section 19, the nature and degree of such misconduct do not warrant disbarment." P. Reg. Prof'l Conduct § 17(E)(2) (2009). "Serious misconduct" is defined by the Procedures as

conduct in violation of the Model Rules that would warrant a sanction terminating or restricting the lawyer's license to practice law. Conduct will be considered serious misconduct if any of the following considerations apply:

(1) The misconduct involves the misappropriation of funds;

(2) The misconduct results in or is likely to result in substantial prejudice to a client or other person;

(3) The misconduct involves dishonesty, deceit, fraud, or misrepresentation by the lawyer;

(4) The misconduct is part of a pattern of similar misconduct;

(5) The lawyer's prior record of public sanctions demonstrates a substantial disregard of the lawyer's professional duties and responsibilities; or

(6) The misconduct constitutes a "Serious Crime" as defined in these Procedures.

P. Reg. Prof'l Conduct § 17(B). Section 19 of the Procedures sets out the factors that the Committee shall consider in imposing a sanction and includes:

A. The nature and degree of the misconduct for which the lawyer is being sanctioned.

B. The seriousness and circumstances surrounding the misconduct.

---

5. Specifically, Mr. Ligon asks this court to take into account information derived from this court's decision in *Rees v. Smith*, 2009 Ark. 169, 301 S.W.3d 467, and a 2007 deposition of Mr. Rees, given in another matter. It appears that Mr. Ligon seeks this court's consideration of the material as evidence that Mr. Rees engaged in sexual relationships with two other clients.

C. The loss or damage to clients.

D. The damage to the profession.

E. The assurance that those who seek legal services in the future will be protected from the type of misconduct found.

F. The profit to the lawyer.

G. The avoidance of repetition.

H. Whether the misconduct was deliberate, intentional or negligent.

I. The deterrent effect on others.

J. The maintenance of respect for the legal profession.

K. The conduct of the lawyer during the course of the Committee action.

L. The lawyer's prior disciplinary record, to include warnings.

M. Matters offered by the lawyer in mitigation or extenuation except that a claim of disability or impairment resulting from the use of alcohol or drugs may not be considered unless the lawyer demonstrates that he or she is successfully pursuing in good faith a program of recovery.

P. Reg. Prof'l Conduct § 19(A–M).

Weighing these factors, it is clear to this court that the Committee's decision to suspend Mr. Rees's license for thirty days was clearly against the preponderance of the evidence. We agree with the Committee that Mr. Rees's actions constituted serious misconduct. Indeed, the Committee found that Mr. Rees committed twelve separate violations of six Rules, specifically, Rules 1.4(b), 1.7(a), 1.7(b), 1.8(e), 1.8(h), and 8.4(d), involving Mr. Rees's failure to explain matters to Ms. Mooney and Mr. George to the extent reasonably necessary for them to make informed decisions regarding their representation; his representation of Mr. George where that representation was directly adverse to his representation of Ms. Mooney; Mr. Rees's representation of Mr. George being materially limited by his responsibilities to Ms. Mooney and without Mr. George's consent to the representation; a lack of consent by Ms. Mooney to the representation of both her and Mr. George; Mr. Rees's provision of financial assistance to Ms. Mooney in connection with her pending litigation; Mr. Rees's agreements with Ms. Mooney in exchange for money and without independent representation that limited his liability for malpractice; and Mr. Rees's nonsuit with prejudice of Mr. George, a key defendant in Ms. Mooney's suit, that was prejudicial to the administration of justice.

Clearly, these actions by Mr. Rees were misconduct that resulted in or were likely to result in substantial prejudice to both Ms. Mooney and Mr. George, thereby constituting serious misconduct. *See* P. Reg. Prof'l Conduct § 17(B)(2). In determining the appropriate sanction, it is further evident that such conduct was not of a minor degree and was of a serious nature. *See* P. Reg. Prof'l Conduct § 19(A). The seriousness of the misconduct was indeed high, where Mr. Rees took actions to dismiss a key defendant in Ms. Mooney's lawsuit even after he realized a conflict. *See* P. Reg. Prof'l Conduct § 19(B). Such conduct damaged Ms. Mooney to the extent that her subsequent attorney had to remedy such damage to preclude a dismissal of her lawsuit. *See* P. Reg. Prof'l Conduct § 19(C). In addition, Mr. Rees's conduct clearly requires a sanction sufficient to assure that any future clients would be protected from such conduct, avoid repetition of such conduct, deter other members of the Bar from engaging in such conduct, and maintain respect for the legal profession. *See* P. Reg. Prof'l Conduct § 19(E, G, I, J).

In light of all of these considerations, we hold that his sanction should be modified to a one-year suspension, with credit for

the thirty days he has already served. We turn, then, to the claims of Mr. Ligon regarding the Committee's failure to find certain violations.

## II. Alleged Rule Violations

### A. Violation of Rule 8.4(c) by failing to disclose conflicting representation

For his second point on appeal, Mr. Ligon argues that the Committee clearly erred in not finding that Mr. Rees's failure to disclose to Mr. George his representation of Ms. Mooney constituted conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of Rule 8.4(c). Mr. Ligon claims that Mr. Rees knew or was charged with the knowledge and requirement that he disclose to Mr. George that he was already representing Ms. Mooney in a suit against Mr. George and that Mr. Rees's claim that he forgot was not credible under the circumstances. Mr. Rees counters, stating that while his conduct may have been a mistake, an error, or in poor judgment, it did not involve dishonesty, fraud, deceit, or misrepresentation. He claims that he did not attempt to conceal the conflict in representation once he became aware of it and that he informed both Ms. Mooney and Mr. George upon that realization. Thus, he asserts, Mr. Ligon's allegations of fraud and deceit do not hold true.

After reviewing the record, we cannot say that the Committee's failure to find a violation of Rule 8.4(c) based on Mr. Rees's failure to inform Mr. George of his representation of Ms. Mooney was clearly erroneous. Rule 8.4(c) provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Model Rule of Prof'l Conduct 8.4(c). Here, Mr. Ligon points this court to the evidence and testimony before the Committee that he believes supports the finding of a violation. However, as set forth above, this court gives due deference to the Committee's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. See Stilley, supra. Whether Mr. Rees's misconduct in failing to inform Mr. George of his conflict was dishonest, fraudulent, deceitful, or a misrepresentation would be a determination based on the weight of the evidence and the credibility of the witnesses. Thus, we are unable to say that the Committee clearly erred in finding no violation of the rule. See, e.g., Ligon v. Newman, 365 Ark. 510, 231 S.W.3d 662 (2006) (holding, in a disbarment proceeding, that the issue of whether the attorney's misconduct was a violation of Rule 8.4(c) was one based on the special judge's assessment of the credibility of witnesses, and, therefore, the court could not say that the finding of a violation of the rule was clearly erroneous).

### B. Violation of Rule 8.4(c) by failing to disclose material conflict

Mr. Ligon next argues that the Committee clearly erred in not finding a violation of Rule 8.4(c) where Mr. Rees engaged in deceit or misrepresentation by failing to disclose to Ms. Mooney the material conflict in her representation by accepting Mr. George as a client. Again, Mr. Ligon points to what he believes are discrepancies in the testimony, which he contends support a violation of the rule.

Mr. Rees responds that there was plenty of evidence on which the Committee could base a finding that he did not know of the conflict in representation until Mr. George was served and notified him, which if true, involved no fraud, deceit, dishonesty, or misrepresentation. He further asserts that the Committee had the right and the duty to resolve any conflicts in the testimony.

As was the case with the prior point, the evidence and testimony were before the Committee, and we give deference to the Committee's superior position to determine the credibility of the evidence and the weight it is to be accorded. *See Donovan v. Supreme Court Comm. on Prof'l Conduct*, 375 Ark. 350, 290 S.W.3d 599 (2009). Whether Mr. Rees's actions in failing to disclose his representation of Mr. George to Ms. Mooney were dishonest, fraudulent, deceitful, or a misrepresentation boils down to a determination of the credibility of the witnesses. As the finder of fact, the Committee must be free to believe or disbelieve ǀ₂₁the witnesses who appear before it when their testimony is conflicting. *See Muhammed v. Arkansas Supreme Court Comm. on Prof'l Conduct*, 291 Ark. 29, 722 S.W.2d 280 (1987). Accordingly, we hold that the Committee did not clearly err in failing to find a violation of Rule 8.4(c) on this basis.

C. Violation of Rule 8.4(c) by accepting a fee from Ms. Mooney

 For his fourth point on appeal, Mr. Ligon asserts that the Committee clearly erred in not finding a violation of Rule 8.4(c) where Mr. Rees accepted a fee for his representation of Ms. Mooney after he had paid her monies for releasing him from liability for his actions. He contends that such actions were misguided and placed his interest above that of his client's, rendering the conduct dishonest, fraudulent, deceitful, and a misrepresentation in violation of the rule. Mr. Rees responds that there is no evidence that he was involved in any fraud or misrepresentation in the disbursement of Ms. Mooney's funds, including the fee paid to him.

Again, we cannot say that the Committee clearly erred in finding no violation. While Mr. Ligon is correct that Mr. Rees's actions in accepting the fees may have been misguided, such does not equate to dishonest, fraudulent, deceitful, or misrepresenting conduct. Where Mr. Rees was retained by Ms. Mooney and performed legal services on her behalf, albeit that the quality of that service was indeed questionable, we simply cannot say that it was dishonest, fraudulent, deceitful, or a misrepresentation for Mr. Rees to accept a fee so as to violate the rule. We, therefore, hold that the Committee did not clearly err in failing to find a violation ǀ₂₂of Rule 8.4(c) on this basis.

D. Violation of Rule 1.2(a) by not abiding by Ms. Mooney's objectives of representation

 Mr. Ligon further argues that the Committee clearly erred in not finding a violation of Rule 1.2(a) where Mr. Rees accepted employment by Mr. George in contravention of Ms. Mooney's objective of representation that he would be loyal to her. He maintains that the "key part of the alleged conduct" was Mr. Rees's "legal maneuvering" to avoid the conflict by nonsuiting with prejudice Mr. George from her lawsuit.

Mr. Rees responds that Ms. Mooney's objective was to recover money for her personal injuries, an objective that was ultimately met when she obtained a $260,000 verdict. He contends that Mr. Ligon is trying to "fit the square peg of the conflicts issue into the round hole of Rule 1.2(a)."

We agree with Mr. Rees. The conduct alleged simply does not fit within the rule. Rule 1.2(a) provides, in pertinent part, that

[a] lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a

client's decision whether to accept an offer of settlement of a matter.

Model Rule of Prof'l Conduct 1.2(a). Here, Mr. Ligon contends that Ms. Mooney's objective of representation was that Mr. Rees would be loyal to her and her case. It was not.

"Loyalty is an essential element in the lawyer's relationship to a client." *See* Comment, Model Rule of Prof'l Conduct 1.7. However, being an element to the attorney-client relationship does not render loyalty an objective of representation. It is clear from the record that Ms. Mooney obtained Mr. Rees's legal services with the objective of pursuing a personal-injury claim for injuries she received as a result of a motor-vehicle accident. An attorney's loyalty and the avoidance of a conflict of interest are not a client's objectives of representation; they are an attorney's ethical obligations under the Rules. *See* Model Rule of Prof'l Conduct 1.7; *see also* Comment, Model Rule of Prof'l Conduct 1.7. Because it was not an objective *of Ms. Mooney's representation that Mr. Rees be loyal to her*, we hold that the Committee did not clearly err in finding no violation of Rule 1.2(a) on this basis.

E. Violation of Rule 1.2(a) by not abiding by Ms. Mooney's objective of representation

■ Mr. Ligon, for his sixth point on appeal, argues that the Committee clearly erred in finding no violation of Rule 1.2(a) where it was not Ms. Mooney's objective of representation that Mr. Rees would make unwanted sexual advances toward her, requiring her to release any claims she might have had against Mr. Rees in exchange for $4000. He contends that the clear weight of the evidence is that unwanted sexual advances to Ms. Mooney were made by Mr. Rees and that such was a violation of Rule 1.2(a).

Mr. Rees disputes these contentions, asserting that Mr. Ligon is again trying to use Rule 1.2(a) in an inapplicable context. He avers that the Committee was in the superior position to weigh the evidence and the credibility of the witnesses, and he further maintains that the logical confines of the rule render Mr. Ligon's argument a stretch, where, again, the plain objective of Ms. Mooney's representation was to obtain a monetary recovery.

Mr. Rees is again correct; Rule 1.2(a) is simply inapplicable in this context. Indeed, whether unwanted sexual advances were made by Mr. Rees was a determination to be made by the factfinder. But, moreover, the objective of Ms. Mooney's representation, as already stated, was the pursuit of a personal-injury judgment for injuries she received as a result of a motor-vehicle accident. It had nothing to do with whether unwanted sexual advances were or were not made. For this reason, we cannot say that the Committee clearly erred in not finding a violation of Rule 1.2(a) on this basis.

F. Committee's failure to rule on allegation

For his final point on appeal, Mr. Ligon contends that he proved Count H.2, which alleged that Mr. Rees's nonsuit of Mr. George from Ms. Mooney's lawsuit necessitated additional court time by causing a continuance of the previously scheduled trial date after the circuit court set aside the nonsuit, in violation of Rule 8.4(d). He contends that because the Committee found a violation of the rule as to Count H.1, it erred when it did not specifically vote on the second and separate allegation in Count H.2. For this reason, he asks this court to now enter a de novo judgment on that allegation.

Mr. Rees responds that this court should not render judgment on that allega-

tion, for two reasons: (1) because Mr. Ligon failed to preserve the matter for appeal and waived the matter by not raising the Committee's failure to vote to the Committee and obtaining a ruling thereon, and (2) because an original decision by this court as to the allegation would be inconsistent with the court's role as a reviewing court. He urges that neither P. Reg. Prof'l Conduct §§ 11(C) or 12(B) required the Committee to rule on every allegation made by Mr. Ligon. In the alternative, Mr. Rees submits that there was insufficient evidence to sustain a violation of the rule on this basis as the evidence demonstrated that Ms. Mooney's case would not have been ready for trial on the scheduled date even had he not obtained a nonsuit of Mr. George.

■ Here, the Committee's order stated that "[h]aving found a violation of Rule 8.4(d), in Count H.1 of the Complaint, the panel did not vote separately on Count H.2." Yet, our review of the record reveals no request by Mr. Ligon, verbal or written, for the Committee to vote or rule on the allegation set forth in Count H.2, following the Committee's decision at the hearing nor after the issuance of its order. While Mr. Ligon asserts that the Committee was required to rule on the alleged violation pursuant to P. Reg. Prof'l Conduct §§ 11(C) and 12(B), we do not agree.

Section 11(C) of the Procedures provides, in pertinent part, that

> [a]t the end of the [public] hearing, the panel shall hold an executive session to deliberate upon any disciplinary action taken. The findings and decision of the panel shall be announced immediately.

P. Reg. Prof'l Conduct § 11(C) (2009). We have held that the Procedures are con-

strued using the same canons of construction used in interpreting statutes. *See Jenkins v. Ligon*, 2010 Ark. 24, 2010 WL 199649. The first rule is to give the words their ordinary and accepted meaning in common language. *See id.* Applying this rule, section 11(C) merely requires that the panel of the Committee deliberate and immediately announce its findings and decision.[6] Its plain language in no way requires the panel of the Committee to vote on every allegation.

■ Nor does the plain language of section 12(B) permit this court to rule on the merits of an alleged violation where the Committee has failed to do so. Section 12(B) of the Procedures provides that

> [a]ppeals from any action by a panel after [a] hearing shall be heard de novo on the record and the Arkansas Supreme Court shall pronounce such judgment as in its opinion should have been pronounced below.

P. Reg. Prof'l Conduct 12(B) (2009). The plain language of section 12(B) renders the instant matter an appeal. We have held, in appeals in both the civil and criminal context, that an appellant's failure to obtain a ruling from the factfinder precludes our appellate review. *See, e.g., Simpson Housing Solutions, LLC v. Hernandez*, 2009 Ark. 480, 347 S.W.3d 1 (holding that this court will not address an argument on appeal if a party has failed to obtain a ruling below); *Kelley v. State*, 375 Ark. 483, 292 S.W.3d 297 (2009) (holding that appellant's failure to obtain a ruling at the trial level, even on a constitutional issue, precluded review on appeal). While attorney-discipline proceedings are neither civil nor criminal, but sui generis, *see* P. Reg. Prof'l Conduct § 1(C), the instant action is an appeal from a factfinder's decision per-

---

6. While not relevant in the instant case because the Committee's findings were unanimous, section 11(C) also requires that if not unanimous, the votes of the individual members shall be announced.

mitted by the Procedures, and the requirement to obtain a ruling below equally applies. Accordingly, because Mr. Ligon failed to obtain a ruling from the Committee on his allegation set forth in Count H.2 of the complaint, we are precluded from reviewing Mr. Ligon's argument on appeal.

For all of the foregoing reasons, we affirm the Committee's findings, and we modify Mr. Rees's suspension in this case to one year, with credit given for thirty days already served.

Affirmed; Sanction modified to one-year suspension with credit for thirty days already served.

BROWN, J., concurs.

BROWN, J., concurring.

This case is unique in that on the day of its submission, three other cases were submitted for a decision by this court in matters where David Rees had been sanctioned by the Professional Conduct Committee: *Ligon v. Rees,* 09–555 (the Ford case); *Ligon v. Rees,* 09–559 (the Papachristou case); and *Ligon v. Rees,* 09–560 (the Brandon case).

In this particular case (the Mooney case), the court has increased the suspension of Rees from the practice of law from thirty days to one year, while crediting Rees with time for the thirty-day suspension. My determination to increase the sanction in this case is influenced in part by his disciplinary record as evidenced by these other three cases.

In particular, I note a pattern of serious misconduct with respect to conflicts of interest as evidenced by the Mooney–George conflict in this case and the Papachristou–Crockett conflict in Case No. 09–559.

We review sanctions imposed by the Committee and impose the appropriate sanction based on the evidence. *See, e.g., Ligon v. Walker,* 2009 Ark. 136, 297

S.W.3d 1. One of the thirteen factors that the Committee must consider in imposing a sanction is "[t]he lawyer's prior disciplinary record, to include warnings." Procedures Regulating Prof'l Conduct § 19.L (2009). I consider the disciplinary record of Rees to be an important factor in our review. It seems artificial to me to consider each of the four David Rees cases handed down today, all of which impose sanctions, as isolated and discrete matters.

In addition, I believe that discerning whether a pattern of misconduct is exhibited by Rees's conduct should come into play in a review of what sanction is appropriate. Patterns of misconduct are important for the Committee to decide the existence of serious misconduct. *Id.* § 17.B(4). So too should they be evaluated for this court to assess the appropriate sanction. In my opinion, the two conflicts of interest already referred to in this opinion in separate cases qualify as a pattern.

For these reasons, I concur in the heightened sanction of one year.